## Eichhorn, et al. v. Morat, et al.

(Decided April 17, 1917.)

Appeal from Jefferson Circuit Court (Chancery Division No. 2).

1. Wills—Competency of Extrinsic Proof to Explain.—It is competent by extrinsic proof to explain and render certain terms in a will employed by the testator to designate the objects of his bounty or the subject matter of the devise which are not themselves certain, provided that the person or subject matter so explained by such proof corresponds with the terms which the testator employed to designate them; but it is always incompetent by such proof to contradict the terms employed by the testator in his will upon the ground that he made a mistake, or to substitute a person as a devisee or property as a subject matter of a devise when the testator has failed to do so by any designation whatever.

2. Wills—Competency of Proof to Explain.—Such testimony consists in placing the court in the circumstances of the testator and ex-

plaining his surroundings, and may also consist of declarations of the testator tending to explain the ambiguous or uncertain term when the case admits of extrinsic testimony at all, especially if made at the time of the execution of the will.

3. Wills—Competency of Husband or Wife to Prove Declaration.— The surviving husband or wife is a competent witness to prove such declarations, when admissible, even though they be a devisee under the will.

4. Wills—Competency of Extrinsic Proof to Explain.—Where the will was written by the testatrix in a foreign language on the eve of entering a hospital for an operation, she having no children or parents surviving her, and in which she did not mention a devisee by individual name, but referred to him as "he" and immediately handed the paper to her husband, with whom she had lived long and happily, stating that it was intended for him and that he could use the property if he desired, and what he did not use she wanted him to remember her relatives: Held, that the case presented is one wherein the introduction of extrinsic proof is competent to explain to whom the testatrix referred by the use of the pronoun "he."

BENNETT H. YOUNG and HARDIN H. HERR for appellants.

EDWARD C. WURTELE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Anna Maria Eichhorn (nee Wurtele) departed this life while a resident of Jefferson county on November 21, 1907, leaving surviving her her husband, the appellant, John A. Eichhorn, and the appellees, as her only heirs and distributees, she leaving no children and having survived both her parents. Before her death and on January 12, 1907, she wrote in the German language and subscribed her name thereto a paper intended by her to be her last will and testament, and which translated into English is:

"Shively, Kentucky, Januere 12, 1907. I, the undersigned, Anna Maria Eichhorn, nee Wurtele, bequeath my personal and real estate which I received from my 1. father in real estate, to-wit, 8½ acres of land, without security, so long as he lives, and should he have need he can sell, and use and will whoever is not satisfied one dollar. Anna Maria Eichhorn, nee Wurtele. Witness George Emmitzenberger."

The eight and one-half acres of land mentioned in that writing were inherited by Mrs. Eichhorn from her father, the appellees inheriting their portions from the same

source. After the death of Mrs. Eichhorn her husband continued in possession of the land, cultivating and using it, until September 29, 1914, when the appellees filed this suit against him, seeking a settlement of his wife's estate, and claiming to have inherited the land as his wife's collateral heirs, asking that it be sold for division, and that he be paid his proper dower allowance out of the proceeds. There was also an effort to charge him with rent from the time of the death of his wife.

To this petition the defendant (appellant) interposed several defenses, but the one presented by this appeal, and which is the only one necessary to be determined, is that the above paper was and is a valid will of his wife, and that he is the intended devisee therein, and that under the will he not only had a right to the use and occupancy of the land during his natural life, but that he took a fee simple title thereto.

A reply completed the issues, and defendant took proof to show the intention of his wife to name and designate him as her devisee, but the court declined to consider the proof and adjudged that the paper was void for uncertainty to such an extent as that it could not be aided by extrinsic proof and treated the case as if Mrs. Eichhorn had died intestate. This conclusion of the court was necessarily followed by a judgment in accordance with the prayer of the petition, and from that judgment the defendant prosecutes this appeal.

It will at once be seen that the sole question is whether it is competent, under the rules of law applicable to the subject, to show by extrinsic testimony whom the testatrix meant by the use of the personal pronoun "he," which word she employed to designate her devisee. There has been much learning displayed and many niceties of distinction made both by text writers and courts, especially in former times when strict technical rules were more universally prevalent, upon the right of courts to resort to extrinsic proof to ascertain the meaning of the maker of a paper (including wills) in the use of the terms which he employed therein. As we gather from the authorities, it may be stated generally that with reference to wills the rule is that if the testator failed altogether to employ any word or term indicating his intention as to the identity of the object of his bounty, or the subject matter of the devise, it is incompetent to supply by extrinsic proof, however overwhelming and convincing, what is supposed to have been his intention in these particulars.

But if he employed in his will a word or term which he intended should identify and to point out his devisee or the property intended to be devised, and which word or term is uncertain and ambiguous on account of being applicable to more than one object or person, it is then competent for the courts to look to extrinsic proof for the purpose of ascertaining the person or object intended. In other words, as it has often been expressed, it is incompetent, by this character of proof, to show what the testator *intended* to say but did not, but it may be shown what was intended by what he *did* say. Wickersham v. Wickersham, 174 Ky. 604; Fowler v. Mercer's Ex'r, 170 Ky. 353; Lewis v. Reed's Ex'r, 168 Ky. 559; Guthrie v. Guthrie, idem. 805; Howard v. Cole, 124 Ky. 816; Bedford v. Bedford, 99 Ky. 284; Trustees, Etc. v. Offutt's Admrs., 6 B. M. 535; Jones on Evidence, Horwitz Edition, vol. 3, secs. 473 and 479; Siegley v. Simpson, 47 L. R. A. 514, and notes thereto.

The rule permitting the introduction of extrinsic evidence in aid of the intention of the testator is furthermore confined to showing such persons and objects as correspond with the terms which he employed, and will not allow the developing by extrinsic proof, as a person or object intended, one who or which will not apply to, or correspond with, the word or words which the testator used. In other words, the person or object shown by the proof to have been intended must be one to which the word sought to be explained will apply. Illustrative of our meaning: In the instant case it would be wholly incompetent to show by extrinsic proof that the testatrix meant by the use of the personal pronoun "he" a female to whom the word used did not apply, and likewise if the subject matter of the devise was stated in the will to be property which is real estate it would be incompetent to show by such proof that it was really intended to include personal property. In neither of the illustrations would the proven intention correspond with the term employed by the testatrix.

With these preliminary statements, we will now briefly consider the law applicable to the subject. As stated in Broom's Legal Maxims, star pages 545 and 546: "Extrinsic evidence is unquestionably admissible for the purpose of showing that the uncertainty which appears on the face of the instrument does not, in point of fact, exist; and that the intent of the party, although uncertainly and ambiguously expressed, may yet be as-

certained by proof of facts to such a degree of certainty
as to allow of the intent being carried into effect; in
cases falling within the scope of this remark, the evidence
is received not for the purpose of proving the testator's
intention, but of explaining the words which he used."

On page 542, the same author says: "It being an
important rule that, in expounding a will, the court is to
ascertain not what the testator actually intended as con-
tradistinguished from what his words express, but what
is the meaning of the words he has used."

To the same effect is Page on Wills, sections 816 and
817. In the case of Siegley v. Simpson, *supra,* in stating
the rule the court, quoting from the case of Woman's
Foreign Missionary Society v. Mitchell, 93 Md. 199, 53
L. R. A. 711, said:

"It is the identity of the individual, natural or arti-
ficial, that is material, and not the name, for that is sim-
ply one of the numerous means by which the identity is
ascertained. The identity being established, the name is
of no importance."

The court in that case further quoted with approval
the rule as laid down in 30 Am. & Eng. Ency. Law, 2nd
Ed. 673, as follows:

"It may be stated generally that, where the benefi-
ciary under a will is not designated with precision, parol
evidence is admissible to show who was intended. . . .
But where there is no ambiguity and the object of the
testator's bounty is sufficiently designated by plain lan-
guage so that it was clear who was intended, the construc-
tion is for the court, and parol evidence is inadmissible,
although it may be thereby shown that the testator's in-
tention was entirely different from that expressed in the
will."

In Jones on Evidence, *supra,* section 477, it is said:
"If the context of the will affords sufficient evidence of
the identity of the person intended as the legatee, the
will alone must be looked to in order to clear up the
difficulty and determine the question. But if the context
fails, or, after examining the whole will, it still remains
uncertain who is the person to take, then recourse must
be had to parol proof. In no case, however, is a bequest
to be deemed void for uncertainty as to the person, pro-
vided the person intended to take can be identified by
any competent evidence. The court never considers a
devise void unless it is so absolutely dark that they can
not find out the testator's meaning."

Further along it is said: "Extrinsic evidence is, however, most frequently introduced where there is no person precisely answering the description in the will."

These rules in their general scope have been adopted and applied by this court in many cases. Mitchell v. Walker, 17 B. M. 61; Hayden v. Ewing's Devisee, 1 B. M. 113; Allen v. VanMeter, 1 Metcalfe 264; Trustees of Catholic Church v. Offutt, 6 B. M. 535; Thomas v. Scott, 24 Ky. Law Rep. 2030, and other cases. See, also, 40 Cyc., pages 1435 and 1439.

. In the light of these authorities and many others extant and which might be cited, we are convinced that the court in the present case is authorized to resort to extrinsic proof for the purpose of ascertaining the person to whom the testatrix referred by the use of the pronoun "he," as that person is evidently the one she intended to be her devisee. It does no violence to the rule against the substitution of a devisee when none is mentioned, nor does it tend to manifest an intention which the testatrix had entirely omitted. Numerous illustrations are found in the books that when the testator devises property to "John" it may be shown what particular person was intended, and the same is true with reference to an uncertainty which may be created by the word which the testator used to designate the property which he intended to devise. It is true that in the case we now have, the pronoun "he" which the testatrix employed might be applied to a great many persons, but when it is remembered that in the illustration given the same might be said with reference to the name John, which is but the more restricted, we are unable to distinguish any logical reason why the rule should not be applied in the one case, as well as the other. There is just as much room for an error to be made by the parol proof as to the real person whom the testator intended in the one case as in the other. The two cases exhibit a difference in degree only, and not in kind.

In the Offutt case, *supra*, the testator made devises to the Catholic church, the Baptist church, the Presbyterian church and the Methodist church. There were many branches of these religious denominations, as well as many congregations of the different branches of those churches; but notwithstanding these facts, this court permitted extrinsic proof to explain and show what particular congregation of those denominations the testator meant, and from this found that he meant the particular

congregations of those respective churches in the town of Taylorsville, Kentucky, where he lived.

The testimony in the instant case shows that the paper in question, after having been written by the testatrix, as hereinbefore stated, was handed by her to the husband, John A. Eichhorn, accompanied with this statement by her: "I have willed that to you if you desire it, if you need it, to do with it as you please, and if you do not need it don't forget—don't forget my relatives."

The circumstances under which it was written, as shown by the proof, are that she was afflicted and about to undergo an operation which had to be and was performed at some infirmary to which she was carried, and where she remained until she died. There is other proof showing her declarations as to what she intended to do with the property which she inherited from her father. As said, none of this testimony attempts to place into the will a devisee when there is no term in it indicating or referring to one. On the contrary, the sole purpose of the testimony is to show who is the devisee which the testatrix meant by the word which she used in the will, and by which she sought to express her intention. Neither is there any effort to contradict any term which she employed or to show that she mistakingly used the wrong term, nor does the testimony show an intended devisee to whom the term she used is not applicable.

The cardinal rule which should always guide the courts in their investigations of controversies is to ascertain the *facts* and apply the law applicable thereto. The modern tendency is toward relaxing the ancient strict technical rules with their hampering effects, and to lift the curtains of the court house so as to let in the light of truth as much so as is consonant with the prevention of fraud and its evil consequences. No rule should be inflexibly adhered to which has for its purpose a frowning influence upon such an enlightening departure, and while we do not regard our conclusions in this case as constituting such departure, we realize that the term sought to be explained is perhaps more indefinite than those heretofore dealt with by most of the authorities, and the term sought to be explained is applicable to a larger number of persons than perhaps is found in such authorities, but we are disinclined to reject the rule altogether because of these facts, and we, therefore, conclude that this case is one where oral testimony is com-

petent to point out the devisee whom the testatrix intended.

As to the character of such testimony, it consists in placing the court as nearly as possible in the position of the testator and showing the surrounding circumstances. 40 Cyc., 1392; Page on Wills 816, and other authorities hereinbefore cited. It is also competent to show the meaning, as well as the use, of the word which the testator employed as he generally used or employed it. As said in Jones on Evidence, *supra,* section 479:

"It is well settled that it may be shown by extrinsic evidence, for the purpose of identifying the person or subject-matter, that the testator was accustomed to apply special names to certain persons, as nicknames, or that he used to designate his property in some peculiar manner."

Further along it is said, quoting from Jarman on Wills, section 732: "And where the testator makes use of the words which in their ordinary sense are unintelligible, but which are used by a certain class of persons to whom the testator belonged or in a certain locality where he dwelt, in a peculiar sense parol evidence may be given to show the fact of such usage."

To the same effect is Broom's Legal Maxims, star page 551.

It is claimed in the instant case by counsel in argument that with German wives, and especially in the locality where Mrs. Eichhorn resided, that they generally referred to their husbands by the masculine personal pronoun, and if this was a method of designation by the class of persons to which she belonged, and which was also employed by her, we think it eminently proper that such testimony should be heard by the court.

It is further proposed to show the declarations of the testatrix as to her intended devisee. Declarations which would contradict the terms employed in the will would, of course, be objectionable. But the law appears to be that declarations, especially if made at the time or about the time of the execution of the will, are competent for the purpose of explaining the uncertainty of the term employed in the will, and to ascertain what was the true intention, provided it is not inconsistent with the word sought to be explained by the testimony. In Jarman on Wills, *supra,* section 481, upon this subject, among other things, it is said:

"Just as we have shown in the preceding section that the testator's declarations are inadmissible where the will is plain and unambiguous, so they *are* admissible when there is an ambiguity which his declarations may serve to explain, whether made prior to, at, or subsequent to the execution of the will."

In McLeod v. Jones, 159 N. C. 74, it is held that

"The declarations of the testator are admissible, especially where made at the time the will was executed, for the purpose of showing the society intended, in an ambiguous bequest to a 'Missionary Society.' "

The same doctrine is held in the case of Siegley v. Simpson, *supra*, as well as by numerous authorities found in the annotated note to that case.

In 40 Cyc. 1435, on this point, it is said:

"In cases of equivocation, as where the will or a provision thereof, applies equally as well to two or more objects or persons, evidence of statements or declarations made by the testator at the time of the execution, or about the time of the execution, of his will, is admissible for the purpose of identifying the person or property he intended."

To this statement, in the note, is appended a long list of cases.

This court recognized the rule in the case of Thomas v. Scott, *supra*, and perhaps other cases, and we therefore think that the declarations of the testatrix attempted to be shown in this case were, under the circumstances, competent.

This leaves for consideration the question as to the competency of the appellant, John A. Eichhorn, to testify as to what his wife told him when she delivered to him the paper in controversy. In the case of Murphy v. Murphy, 23 Ky. Law Reporter 1460, it is held that the wife of the testator is a competent witness in a contest of his will to show statements which he made, notwithstanding the fact that she was a beneficiary in the will. It may be insisted that the present case is not a contest of a will, but is a suit for the construction of the paper alleged to be one. The technical difference may be admitted, but, after all, in each case the subject of inquiry is that of will or no will, for it is insisted by appellees that Mrs. Eichhorn died leaving no will, although they admit that she executed the paper in contest. We are unable to see wherein the distinction exists so as to permit the surviving spouse to be a competent witness in

the one case and not in the other. We conclude, therefore, that appellant is a competent witness to prove the statements and declarations made by his wife.

As to the interest which the appellant takes in the property mentioned in the will, it is not now before us, and we express no opinion upon that subject.

Upon the whole case, we are convinced that the court erred in refusing to admit the character of oral testimony which we have herein discussed to explain the language which the testatrix used and to ascertain therefrom whom she meant or intended to be her devisee.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.