## Marquette v. Marquette's Executors, et al.

(Decided January 14, 1921.)

### Appeal from Pendleton Circuit Court.

1. Wills—Construction—Intention of Testator.—The cardinal rule in the construction of wills is to ascertain, if possible, from the language in the entire will the intention of the testator, and to construe it so as to carry out that intention; but, the intention thus to be arrived at is the one which the testator expressed by the language used and not the one which he intended to but did not express.

2. Wills—Construction—Intention of Testator.—Where from the language employed in the entire will, there exists an uncerainty, repugnancy, or an apparent ambiguity, it is competent for the court to permit testimony showing the surrounding circumstances and conditions of the testator at the time he executed his will, for the purpose, if possible, of ascertaining his intention; but where the language employed in its ordinary and usually understood meaning is free from uncertainty, extraneous evidence will not be resorted to.

3. Wills—Signification of Word Children—Intention of Testator.— The primary, usual and ordinarily legal signification of the word "children" is "legitimate children," and the term as used in a will will not include illegitimate children, unless it expressly, or by necessary implication appears from the will itself that it was the intention of the tesator to include in the word "children," illegitimate children.

C. C. ADAMS for appellant.

SWINFORD & BARKER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

J. J. Marquette died testate and a resident of Pendleton county. His will, which was probated after his death, named the appellees and defendants below, J. W. and L. R. Marquette, as executors thereof and at the time designated in the will (which was after the widow's

death) they qualified as such. After devising all of his property, both real and personal, to his wife for life and making a specific devise to his son, Columbus, the will contains this residuary clause:

"To the rest of my children, the remainder of my property, less three hundred dollars ($300.00), which is to be used to purchase a monument for myself and wife, both personal and real is to be divided equally among them after deducting any indebtedness they may owe me."

The testator had by his wife, who survived him and to whom he was lawfully married, eleven children and under the terms of the will the property mentioned in the residuary clause would be divided into ten equal parts. The executors, after collecting all the assets, paying the debts and specific devises, had a balance in their hands for distribution the sum of $6,455.19, which they divided equally among the ten children entitled to share under the residuary clause. The testator owned several tracts of land, none of which had been divided at the time of the filing of these two suits by appellant and plaintiff below, John L. Marquette, against the executors and the other children of the testator, by one of which he sought to assert his right to a one-eleventh interest in the personalty of the testator, and by the other one he sought to assert a similar interest in the real property and to have it sold for the purpose of division. The two suits were consolidated and tried together in the court below and will be so disposed of in this court. In his petitions the plaintiff alleged that he was a child of the testator and entitled under his will to share in his estate with the other children. The answer denied all the allegations of the petition and alleged in substance that plaintiff was the child of a woman to whom the testator was never married and with whom he never cohabited, nor did he ever recognize her as his wife, and that the only woman to whom the testator was ever married was the mother of defendants by whom he had the children among whom the executors had divided the personalty and the only ones who were entitled thereto or who were entitled to any interest in the realty. A demurrer to the answer was overruled and a reply filed by plaintiff admitted his illegitimacy but alleged in a second paragraph that:

"The plaintiff, John L. Marquette, states that a short while after he was born, and while he was an infant of very tender years, his father, the said John J. Marquette, gave unto the plaintiff his name, took him into his home and family, and ever afterwards, acknowledged, claimed and recognized the plaintiff to be his own, truly begotten child; that his father, J. J. Marquette, his father's wife, the mother of defendants, and his father's said other children, both publicly and privately, on all occasions, and in every conceivable way, constantly and continuously acknowledged, recognized, and held the plaintiff out to all persons to be a child of the said John J. Marquette, and a brother of his said other children; that he was nurtured, clothed, sheltered, taught and educated, at school and church, and always given a full share and status in his father's home and family and socially, and in every other way, accorded the same privileges, protection, care, attention and admonition as his father's said other children; and the plaintiff states that he continued to reside with his father, and his father's wife, and other children and did live with them and made his home therewith continuously until long after he attained his age of majority, and during all of said period, the plaintiff states, working with his father's said other children, that he loyally and devotedly assisted his father in the accumulation of the estate and property left by him for distribution on his decease.

"The plaintiff states that his father John J. Marquette, never ceased to acknowledge, recognize and claim the plaintiff to be one of his children, but that, until the time of his death, he constantly regarded the plaintiff to be his own child, always recognized and referred to the plaintiff as one of his children, and often stated to this plaintiff, and on divers occasions, frequently declared to many persons, both before and after the making of his said last will and testament, that it was his settled purpose and intention to have this plaintiff participate and share equally with his said other children in the distribution of his property and estate, and the plaintiff avers that it was intended by his father in the execution of the said instrument and testament to give to this plaintiff the same share in his said estate that he gave to the other children therein."

The demurrer filed by defendants to the reply was sustained and plaintiff declining to plead further his

petitions were dismissed and to reverse that judgment he has appealed.

The question very sharply presented is, whether it is competent to show by extrinsic evidence that the testator meant by the expression "my children" to include an illegitimate child, or whether it, standing alone, without anything appearing *in the will* to the contrary, will be conclusively presumed to embrace only legitimate children? In answering the question it is indispensably necessary to remember that the cardinal rule for the interpretation of wills, everywhere recognized, is to ascertain and administer the intention of the testator as gathered from the entire will, or as has been sometimes expressed, from its "four corners." Shields' Executor v. Shields, 185 Ky. 249; Radford v. Fidelty & Columbia Trust Co., idem. 453; Hughes v. Cleveland Jewish Orphanage Asylum, 184 Ky. 461; Sauer v. Taylor's Executor, idem. 609; Greenwell v. Whitehead, idem. 74; Phelps v. Stoner's Admr., idem. 466; White v. White, 150 Ky. 283; Eichorn v. Morat, 175 Ky. 80; Wickersham v. Wickersham, 174 Ky. 604; Fowler v. Mercer's Executor, 170 Ky. 353; and Prather v. Watson, 187 Ky. 709. But *the intention* of the testator which the court must ascertain from the will, and administer, is that which is expressed by what he did say and not what he may have mentally entertained and intended to say but did not. Shields, Wickersham, Fowler, Mercer, Eichorn and Prather cases, *supra,* and 40 Cyc. 1386-1387. In other words, the intention which the court seeks is the one which is manifested by the language which the testator employed in drafting his will, and in arriving at the meaning of his language the usual, primary and commonly understood signification of the words employed will be given to them, *unless* some contrary signification, either expressly or by necessary implication, appears from the whole will. Compton v. Compton, 167 Ky. 657; Dixon v. Dixon, 180 Ky. 423, and 40 Cyc. 1396. This rule is thus stated in the volume of Cyc. referred to:

"A testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense, and in construing the will the words employed are to be taken in that sense, unless it is manifest from the context of the whole will, or from the subject matter, that the testator intended to use them in a different sense, or unless a reading of the words in their primary

or ordinary sense will lead to some absurdity, repugnancy, or inconsistency with the declared intention of the testator as ascertained from the whole will, in which case the natural and ordinary meaning of the words may be modified, extended, or abridged. Where the words when given their natural, ordinary, or popular meaning are plain and unambiguous, and show a clear intention on the part of the testator, they must be given that meaning notwithstanding their effect, and such meaning cannot be departed from for the purpose of giving effect to what it may be supposed was the intention of the testator, or merely because they lead to consequences which are capricious or even harsh or unreasonable.''

What might be termed a secondary or subsidiary rule for the interpretation of wills is the one which permits courts to place themselves, by extraneous testimony, in the position and surrounding circumstances of the testator at the time he executed his will, but this rule applies only when there appears from the language of the will itself some uncertainty, ambiguity or repugnancy, which it is necessary to resolve and settle in order to ascertain what the testator meant. It is never resorted to when the language is plain and unambiguous, however harsh, capricious or unreasonable the consequences might be. It is only under such conditions that the secondary or subsidiary rule now under consideration was resorted to by this court in the cases, *supra,* the most extreme one perhaps, being the Eichorn case. In that case the testatrix designated her devisee by the use only of the pronouns ''he'' and ''him.'' It was held in the opinion that it was competent to show the surrounding circumstances and conditions of the testatrix to ascertain what particular male person she referred to by the use of the masculine personal pronoun. It is therein shown that the authority to resort to extrinsic proof in similar cases is thoroughly established and upheld by all courts and text writers. The cases of Reuling v. Reuling, 137 Ky. 637; Buschemeyer v. Klein, 139 Ky. 124, and Commonwealth v. Manuel, 183 Ky. 48, cited and relied on by counsel for appellant, announce no conflicting doctrine, but on the contrary the opinions are in complete harmony with what we have herein stated.

In the light of these thoroughly settled rules, whom did the testator in this case mean to include by the ex-

pression "my children" as used in the residuary clause of his will? The primary, usual, ordinary and legal signification of the word "children" as used in a will is "legitimate children" and it will not include illegitimate children "unless the testator's intention to include them is clear, either by express designation or necessary implication." 40 Cyc. 1451; 11 Corpus Juris 762; Heater v. Van Auken, 14 N. J. Eq. 159; Tuttle v. Woolworth, 74 N. J. Eq. 310; note in 47 L. R. A. (N. S.) 534, and cases referred to; Ferguson v. Mason, 2 Sneed (Tenn.) 618; Appel v. Byers, 98 Pa. St. 479; note in American Annotated cases 1915B, page 51, and cases referred to; Harrold v. Hagan, 147 N. C. 111, 125 Amer. St. Rep. 539; Sullivan v. Parker, 113 N. C. 301; Kemper v. Fort, 219 Pa. 85, 13 L. R. A. (N. S.) 820, 123 Amer. St. Rep. 623; Brisban v. Huntington, 128 Iowa 166; In re Truman, 27 Rhode Island 209, and Elliott v. Elliott, 117 Indiana 380. We find nothing in the case of Harness v. Harness, 98 N. E. R. (Ind.) 537, or in any of the other cases referred to by appellant's counsel, in conflict with the above rule. Illustrating such want of conflict we will refer briefly to the facts of the Harness case. There the testator devised property to his son Samuel Harness and after his death to "his children." Samuel was the father of an illegitimate child who was the plaintiff and appellee in the case, and after the birth of plaintiff, testator's son, Samuel, married the plaintiff's mother, which under the statutes of Indiana rendered plaintiff legitimate and under prior decisions of the Indiana Supreme Court bastard children thus rendered legitimate were made so for all purposes. The mother and father of plaintiff were afterwards divorced and the latter married another woman by whom he had three children. The testator therein knew all the facts at the time he executed his will and of course he was presumed to know the laws of Indiana, including the statute referred to. He always referred to the plaintiff as his grandson and his son, Samuel, referred to plaintiff as his son. The court held under the circumstances that plaintiff was entitled to share in the will of his grandfather as being included within the terms of his will, since plaintiff had been made the legitimate child of his father through the latter's marriage with his mother. Clearly there was no departure in that case from the general rule, *supra,* that the word "children" in its primary meaning signifies

"legitimate children," since plaintiff had been made legitimate in the manner stated. The court, in the opinion admits that in arriving at its conclusion resort was had to the *language* of the will considered in the light of the circumstances. It says, "If, *upon a consideration of the whole instrument,* in the light of the circumstances preceding and attending its execution, it appears that the testator intended to include the child of illegitimate birth, such intention prevails and must be given effect." An examination of all the other cases referred to and relied on will show that some such controlling fact existed in each of them and the court was influenced by the fact that there was a "necessary implication" from the language of the will as interpreted by the extraneously proven circumstances to include *illegitimate children* in the devise to *children.*

In the instant case there is no ambiguity, repugnancy or uncertainty in the language of the testator. He uses the words "my children" without employing any other expression in the entire will to indicate that he meant to include any other persons than those primarily included within the usual and ordinarily accepted meaning of the term which, as we have seen, is legitimate children. It is true that if there were no persons to whom the term would apply in its usual and ordinary meaning (legitimate children) it would be competent to show that the testator meant illegitimate children, if there were any; but so long as there are individuals to whom the term can apply in its ordinary meaning, it will be conclusively presumed that only those persons are referred to, unless there is an implication to the contrary found somewhere in the will. To hold otherwise would open wide the door for extraneous proof, not only to enlarge a plain and usually understood term with reference to the designation of beneficiaries, but likewise enlarge equally plain and well understood terms designating the subject matter of the devise. And thus, the certainty of wills in these respects, as well as the intention of the testator with reference thereto, would be disturbed, frustrated, and in many cases perhaps entirely thwarted. Besides, such a rule as contended for in this case would inevitably result in much fraud, to say nothing of possible perjury. The established rules, *supra,* have been duly weighed and tried and have been found to effectuate justice much more than could be done were

they abandoned, although in some occasional cases (as is contended here) their application might produce harsh results. The same legal principle is involved where the contest is between "children" and "grandchildren, or stepchildren" or "adopted children," as will be seen from an examination of some of the cases, *supra,* and 40 Cyc. 1448-1455. This court in the cases of Hughes v. Hughes, 12 B. M. 115; Churchill v. Churchill, 2 Met. 466; Shetts v. Grubbs, 4 Met. 339, and Hopson's Executor v. Commonwealth, etc., 7 Bush 644, had before it the question whether the word *children,* used in a will to designate the devisees, embraced grandchildren so as to permit the latter to share in the division of the estate. There was nothing in either of the wills involved to indicate that the testator had employed the word "children" in any other than its ordinary and usual sense and the court denied the right of the grandchildren to participate in the division of the estate. In doing so the opinion in the Hopson case said: "Ordinarily there is no warrant for thus enlarging the term, and it will not be done except where the will would otherwise be inoperative (i. e. as where there were no children) or 'where the testator has shown by other words. that he did not use the word in its ordinary and proper meaning, but in a more extended sense.' (Churchill v. Churchill, 2 Metcalfe, 496, and authorities cited; Shetts v. Grubb's Ex'r, 4 Metcalfe 341.) And none of the statutory provisions upon the subject of devises can be so construed as to abrogate or modify this well established rule of construction, nor has this court so held in any case." Later in the opinion it is said: "A careful scrutiny of the entire instrument satisfies us that the testator fully understood the ordinary popular meaning of the term used (nothing appearing in the will to the contrary) and that he intended by its use to convey the idea which would naturally and ordinarily be conveyed by the language chosen."

We see no escape from the conclusion reached by the trial court and its judgment is affirmed.