## Tarr v. Tarr's Executor.

(Decided May 24, 1935.)

DICKSON, BRADLEY & BLANTON for appellant.

D. D. CLINE, N. C. FISHER and GENE LAIR for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Mary K. Tarr died testate while a resident of Bourbon county in March, 1933. In due time her will was probated in the Bourbon county court and this controversy involves the sharp and narrow question as to what property was embraced in two clauses of her will saying: "I devise to Fisher Tarr, brother of my deceased husband, my lumber yard on Main St., in Paris, Kentucky, with office and other buldings thereon owned by me," and "I will that my Bourbon Lumber Company stock be sold. Only the lumber Yard and buildings thereon do I will Fisher Tarr." Other portions of her will made specific devises and contained a residuary clause, and one conferring powers on her executor.

This controversy is between Fisher Tarr and the executors and other devisees concerning whether or not a brick business building on the corner of the lumber yard lot, which was not used in or in connection with the lumber business that was being conducted on other portions of that lot, passed to appellant and defendant below, Fisher Tarr, under the inserted clauses of Mrs. Tarr's will. The learned trial judge first concluded that the brick store building was embraced by the above language of the will making a devise to Fisher Tarr;

but before entering judgment on that tentative conclusion he changed his mind and finally held that the brick store building did not pass to Fisher Tarr under Mrs. Tarr's will, and entered judgment accordingly, to reverse which he prosecutes this appeal.

The controversy was precipitated because of a state of facts developed by pleadings, and testimony introduced at the hearing, but which were objected to by appellees on the ground that the language of the will embodying the two involved clauses was such as did not call for extrinsic and parol proof in order to ascertain the intention of testatrix at the time she employed it and which was and is her own, since her will is a holographic one. Those facts, so developed, were and are: That the testatrix acquired the property in 1906 (which is a lot at the corner of the junction of Main street and Clay avenue, in Paris, Ky., and being 150 feet on Main street, and 250 feet on Clay avenue) from trustees of the estate of James M. Thomas, then deceased, the consideration being $5,005, then paid in cash, and which is recited in the deed. The description of the lot as contained in the deed, after locating it at the junction of the two streets that we have mentioned and giving its dimensions, also said: "Being the same property lately occupied as a lumber yard." Long prior to the death of James M. Thomas, he conducted a lumber and building material business on the lot and at the junction of the two streets that we have referred to he had constructed a frame office building which he used for that purpose until he died a short time before his trustees conveyed the property to testatrix.

For a long time prior to the making of that deed, T. H. Tarr, the husband of testatrix, was engaged in the same business of handling building material in competition with Thomas, but which was located in a different part of the city; that after testatrix acquired the Thomas lot, which had come to be known as the "lumber yard property" (from the fact of its having been used and devoted to that purpose by Thomas), the husband of testatrix moved the location of his lumber and building material business from where he had theretofore conducted it to the Thomas lot, and there is testimony that for a short while thereafter he used as his office the same frame building that had been erected and so used for that purpose by Thomas. But whether the

latter fact be true or not, the testimony showed that shortly after the husband located his business on the Thomas, or what had come to be known as the lumber yard lot, he tore away the frame building on its corner at the junction of the two streets mentioned and erected on the same site a two-story brick building, the first floor of which has since been used as a retail grocery store, while the second one was equipped for residential purposes and which was at first occupied by Mr. and Mrs. Tarr as their residence. Following that, or during the construction of the brick building, Mr. Tarr constructed a frame office building on a different part of the Thomas lot, which he and others thereafter used in the continued operation of the business on all portions of the Tarr lot except the surface that was occupied by the brick building at the corner. However, some eight or ten years ago a frame building used in connection with the lumber yard business was constructed with a half hip roof the comb of which was attached to the outer brick wall of the store building.

Mr. Tarr died in the year 1914, and after his death the lumber business which he was then operating on the Thomas lot was incorporated, with testatrix owning one-fourth of the stock and others owning the remaining three-fourths, the name of the corporation being "The Bourbon Lumber Company." Testatrix did not convey the lot or any portion of it to the corporation, but rented to it all of the ground it occupied, and rented the brick store building to another; the corporation not using it or any portion of it, except as one wall to the shedroom that we have above mentioned. Mrs. Tarr owned other real estate in addition to the Thomas lot which she disposed of in her will. It was also shown that some years ago a business concern obtained a right of way across the Thomas lot from testatrix, and in the deed she executed therefor she referred to the lot that it crossed as "being the same property lately occupied as a lumber yard." There are other scattered facts and circumstances pointing to what we think is erringly true, i. e. that the entire Thomas lot that testatrix acquired by deed in 1906 was not only theretofore known as "the lumber yard property" (which the business that Thomas conducted thereon gave to it), but that the designation clung to it continuously thereafter, and that the entire parcel of land so acquired by her was so known and referred to generally in the community, and

which was done without any idea of segregation because of the construction of the corner brick building thereon. It was never fenced off from other portions of the entire lot, nor was there ever any marked line or lines separating the lot upon which that building stood from the remaining portion of the entire parcel, and she always assessed for taxation the whole of the lot as one parcel of her property.

Learned counsel first argue that the court erred in permitting the introduction of parol testimony as an aid in construing the involved sections of the will under consideration, and their industry, with the exercise of a like quality on the part of opposing counsel, has caused them to direct our attention to practically every case that has come before this court in which the question was involved, some of the latest of which are Eichorn v. Morat, 175 Ky. 80, 193 S. W. 1013, Williams v. Williams, 182 Ky. 738, 207 S. W. 468, Noel v. Jones, 185 Ky. 835, 216 S. W. 98, Marquette v. Marquette's Ex'rs, 190 Ky. 182, 227 S. W. 157, Violett's Adm'r v. Violett, 217 Ky. 59, 288 S. W. 1016, and P'Simer v. Steele, 106 S. W. 851, 32 Ky. Law Rep. 647. A great many others are cited by counsel, but they all announce, approve, and apply the same principle, which is, that where the language of a will or other writing referring to or describing property is plain and not indefinite and free from latent ambiguity, parol testimony is not admissible for the purpose of attaching a different significance to it than what is plainly expressed in the writing; but on the other hand, when the descriptive terms of the property devised are such that when applied to the facts of the case an ambiguity is created whereby it becomes doubtful as to what property was intended by the executor of the paper to be embraced by the term or terms he employed, then parol testimony, whereby the court may be put into the possession of the facts, is admissible in order for it to view the situation through the same spectacles as did testator when he wrote, dictated, or prepared his will. See Simons v. Bowers, — Ky. — , 81 S. W. (2d) 604 (decided April 19, 1935).

It is argued by one side and denied by the other that under that rule the expression "my lumber yard on Main St., in Paris, Kentucky" (which was the language employed by testatrix in her devise to appellant) contains no lurking or "latent" ambiguity, and is necessarily confined to the specific property actually occupied

by the Bourbon Lumber Company in the operation of its business on the Thomas "lumber yard" lot. But the facts developed by the parol testimony in this case clearly and most convincingly develop conditions which render that contention of counsel untenable. On the contrary, it is our conclusion that such developments convincingly establish the fact that testatrix intended to embrace by such descriptive terms her entire lot that had theretofore been used and employed as a "lumber yard" site and thereby acquired the name of the "lumber yard" lot or property. We are therefore in accord with counsel when they insist that, in the light of that testimony, the court erroneously interpreted the involved clauses of Mrs. Tarr's will. The latter conclusion is fortified by the remaining language used in the first inserted clause from her will, immediately following the descriptive words, supra, which says: "With office and other buildings thereon owned by me." That (the latter) language not only substantiates the idea that the testatrix never purposed in her will to segregate or divide the Thomas lot that she acquired in 1906, but to dispose of it as a whole, and that such disposition carried with it not only the office on that lot, but all "other buildings thereon owned by me." The words "owned by me" are shown by the testimony to be cautionary ones on the part of the testatrix, since it was shown that one building on the ground occupied by the lumber company was constructed by it in conjunction with Mrs. Tarr, she paying about one-fourth of the cost price, and which fact possibly created a doubt in her mind as to her right to dispose of all of it, and which not only evidences a full comprehension of the facts on her part, but also an intention to be definite and certain as to the property she was intending to devise to appellant.

That conclusion is further fortified when more than two pages later on in her will she employs the second inserted clause, supra, and which was no doubt done to meet a lingering doubt in her mind as to whether or not her prior devise to appellant would carry with it her stock in the Bourbon Lumber Company, and to prevent that being done she expressly excluded it from the devise to appellant in the earlier clause of her will, and directed that it be sold, and she then added, "only the lumber yard and buildings thereon do I will Fisher Tarr." Such doubt in her mind when she sought to

correct by inserting the explanatory or second clause, supra, in her will, was clearly generated from her conscious intention to devise to appellant the lumber yard property "with office and other buildings thereon owned by me," with no more or greater rights in and to that property, or the business thereon conducted; and for fear that her will might be construed so as to embrace her stock in the corporation, she penned the second or explanatory clause of her will, supra, so as to exclude that stock; and which would have been a most excellent place for her to have also excluded the brick building on the corner of the lumber yard lot if it had been her intention to do so.

We could fortify the conclusions herein reached by a most extended list of cases both domestic and foreign, but the rules above enunciated are so well established and so firmly rooted in the law as to not require it. Suffice it to say that under the facts of this case the language employed by the testatrix in describing the property devised to appellant is both inaccurate and indefinite, and in such case parol testimony as to the circumstances and conditions surrounding the party whose language is sought to be interpreted is competent to enable the court to ascertain his meaning. The language here involved calls for such testimony, and when it is examined, and the circumstances and conditions developed by it are given proper weight, we have no doubt of the correctness of our above-expressed conclusions as to the intention of testatrix.

A most extensive annotation on the question of "Admissibility of extrinsic evidence to aid interpretation of wills" appears in 94 A. L. R., commencing on page 26, and continuing to and including page 293. Pages thereof from 131 to and including 158 are devoted to a consideration of the exact question now under consideration, and we recommend it to the reader. It is in complete accord with what we have said and which the annotator also shows and points out is the conclusions of courts in all other jurisdictions.

For the reasons stated, the judgment is reversed, with directions to set it aside, and to enter one adjudging the appellant to be the owner of the brick storehouse in contest as devisee of the testatrix, and for other proceedings consistent with this opinion.