## Simpson v. Simpson.

(Decided June 14, 1938.)

MONTGOMERY & MONTGOMERY and OLIVER POPPLEWELL for appellant.

MOORE & PITTMAN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

This appeal is from a judgment fixing the boundary line between the lands of appellant and appellee, and awarding appellee $50 damages for trespass.

Appellant, C. L. Simpson, and appellee, Kell Simpson, were sons of A. M. Simpson who died in 1932, leaving a widow and five children. He left a will in which he devised certain lands to his son, Jesse, and his daughters, Ethel and Mollie. By the sixth paragraph of the will, he devised the farm on which he resided at the time of his death to his sons, C. L. Simpson and Kell Simpson. The clause which caused this controversy reads:

"The Home farm is to go to Kell and C. L. Simpson both my sons. Now Kell is to have the part of the farm from the house back up the creek to his house and C. L. to have the part down the

creek below my house and with my buildings included.''

This farm, consisting of approximately 325 acres, is located on a creek known as Little South Fork, which flows in a westerly direction. Almost all of the farm is located north of the creek. The house in which the testator lived is located near the intersection of Little South Fork and Buck branch and is north of Little South Fork and east of the branch. The yard around the house was enclosed by a fence. Grouped about the house on both the east and west side of Buck branch are several buildings. In the southwest corner of the yard is a storehouse fronting on a road which runs along the north bank of Little South Fork. In the northeast corner of the yard are an apple house, meat house, and a well, and near the southeast corner of the yard and between the yard fence and the road are two small buildings, a garage and blacksmith shop. Just outside the yard on the west side is a woodshed, and across Buck branch and on the west side are several buildings, including a chicken house, stable, corn crib, and tobacco barn. After the will of A. M. Simpson was probated in November, 1932, the appellant, C. L. Simpson, moved into the residence on the farm devised to him and appellee, and occupied it with his mother, the testator's widow. He used the buildings around the house, and in 1935 planted tobacco in a part of the garden which adjoined the yard on the north. Sometime in 1935, Kell Simpson removed the fence along the east side of the yard and garden, and cut down two or three trees which stood in the yard east of the house. Claiming that C. L. Simpson had trespassed upon the land devised to him by cultivating the garden north of the house, Kell Simpson brought an action in the Casey circuit court to enjoin his brother from entering upon the land and for damages alleged to have been caused by the trespass. He alleged in his petition that, under the will of A. M. Simpson, he was the owner of the land being cultivated by C. L. Simpson. The defendant filed an answer and counterclaim denying the trespass, and alleging that Kell Simpson had trespassed upon the land devised to the defendant by destroying the fence along the east side of the yard and cutting down trees in the yard. The circuit court adjudged that the line between the lands devised to C. L. Simpson and Kell Simpson ran with the west side of

the residence and extended to the outside lines of the farm. This gave the house in which C. L. Simpson and his mother lived and all buildings on the east side of the house, including the meat house, apple house, garage, and shop, to Kell Simpson, and to C. L. Simpson the yard west of the house, the storehouse standing in the southwest corner of the yard, the woodshed, chicken house, crib, stable, and tobacco barn. Kell Simpson was also allowed $50 for the alleged trespass. C. L. Simpson appeals, and Kell Simpson has cross-appealed on the ground that the court erred in failing to fix the line at the west side of the yard.

The correct answer to the question presented hinges on the construction given to the clause of A. M. Simpson's will heretofore quoted. At the time the will was executed, appellant owned 50 acres of land adjoining his father's farm on the west, and appellee owned 50 acres adjoining it on the east. These two 50-acre tracts had been conveyed to appellant and appellee by their father. It was obviously the intention of the testator to divide the remainder of the tract between his two sons and to divide it in such manner that the part devised to each would adjoin the land then owned by him. The words, "Kell is to have the part of the farm from the house back up the creek to his house," standing alone, would give to Kell all the land east of the house, not including the house, and the words, "C. L. to have the part down the creek below my house," standing alone, would give to C. L. Simpson all of the land west of the house, excluding the house, but this clause is followed by the words, "and with my buildings included." It is evident the testator intended to include in the devise to C. L. Simpson the house and outbuildings. If, as contended by appellee, he meant by these words only the buildings on the land west of the west side of the yard, they are merely surplusage. It would be unreasonable to assume that he intended to run the line through the yard and give to one son the house and to the other son the outbuildings theretofore used in connection therewith, such as the chicken house, woodshed, crib, and stable. The deposition of W. E. Simpson, brother of the testator, was taken, and he testified that he visited at his brother's home about two months before the latter's death, and the testator told him he had executed his will, dividing the home farm between his two sons, Kell and C. L. Simpson, and he pointed

out the division line. It was located east of the house and the yard, and all buildings were in the part given to C. L. Simpson. Ordinarily, parol evidence of what was the testator's intention should be excluded, but where the description in the will of the person or thing intended is applicable to each of several subjects, extrinsic evidence is admissible to prove which of such subjects was intended by the testator. In Sichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013, it was said (page 1014):

"There has been much learning displayed and many niceties of distinction made both by textwriters and courts, especially in former times, when strict technical rules were more universally prevalent, upon the right of courts to resort to extrinsic proof to ascertain the meaning of the maker of a paper (including wills) in the use of the terms which he employed therein. As we gather from the authorities, it may be stated generally that with reference to wills the rule is that, if the testator failed altogether to employ any word or term indicating his intention as to the identity of the object of his bounty, or the subject-matter of the devise, it is incompetent to supply by extrinsic proof, however overwhelming and convincing, what is supposed to have been his intention in these particulars. But if he employed in his will a word or term which he intended should identify and to point out his devisee or the property intended to be devised, and which word or term is uncertain and ambiguous on account of being applicable to more than one object or person, it is then competent for the courts to look to extrinsic proof for the purpose of ascertaining the person or object intended. In other words, as it has often been expressed, it is incompetent, by this character of proof, to show what the testator intended to say, but did not, but it may be shown what was intended by what he did say."

See, also, Ratliff v. Yost, 263 Ky. 239, 92 S. W. (2d) 95; Tarr v. Tarr's Ex'r, 259 Ky. 638, 82 S. W. (2d) 810; annotations in 94 A. L. R. 26.

If there were doubt concerning the property the testator intended to devise to his son, C. L. Simpson, by the language, "C. L. to have the part down the creek below my house and with my buildings included," the

testimony of W. E. Simpson would remove it; but if consideration be confined to the strict letter of the instrument, we think it is clear the testator intended to devise to C. L. Simpson all land west of the line of the fence along the east side of the yard.

The judgment is affirmed on the cross-appeal, and reversed on the original appeal, with directions to enter a judgment in conformity herewith.