## Daniel v. Tyler's Ex'r et al.

Dec. 3, 1943.

As Modified on Denial of Rehearing

Feb. 4, 1944.

Ben D. Ringo, H. L. Barger and Woodward, Dawson & Hobson for appellant.

Cary, Miller & Kirk for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Miss Clara H. Tyler, an elderly lady, left an estate of over $50,000 in personal property. She was survived by a sister and a number of nieces and nephews. A few of them were named as her legatees. Her will was dated December 7, 1939, and she died May 24, 1941. She devised $1,000 to her sister, Mrs. Margaret T. Bryan, if living; if not, to three of her daughters. The second paragraph of the will disposed of certain family heirlooms. The third paragraph devised $500 to her niece, Mrs. Cecilia Embry Daniel. The fourth paragraph is as follows: "I have made notations upon a yellow envelope in my lock box at The National Deposit Bank in Owensboro directing certain gifts to those who are named in the notations or recitations just referred to. I devise the property to such ones as are so named according to the notations, insofar as I may have said property at the time of my death, and I specifically direct my

executor to distribute and deliver said property in accordance with those notations, those named being Julia Bryan Livesay, Eliza Hawes Bryan, Elvia Bryan Rogers and Cecilia Embry Daniel. Those notations and recitations together with the other items specifically mentioned in this will, constitute a full and complete devise and disposition of my estate, the property which I may have at the time of my death, and they are so intended by me. If any uncertainty may be found to exist on account of this provision, I direct and devise that such uncertainty be cleared away by making equal divisions among Julia Bryan Livesay, Eliza Hawes Bryan and Elvia Bryan Rogers so as to complete the division of my estate and eliminate any possible uncertainty.''

The testatrix's safety deposit box contained an earlier will bearing changes and mutilations in pencil; a memorandum in the form of a will but not executed; several little packages of currency and coins, and a number of miscellaneous papers and memoranda, most of which was worthless. There were also several envelopes with various memoranda on them. There was quite a lot of securities and other papers loose in the box.

One envelope, Exhibit No. 1, had written on it, apparently in the handwriting of a representative of the bank, Miss Tyler's name and address, and the note, ''3 bonds @ 100—3—1 bond at 50—50.'' Apparently in her handwriting there appears ''Liberty Bonds.'' On the reverse side of the envelope in her hand, in pencil, appears this memoranda: ''These left after I go for Eliza Bryan, Julia Bryan, and Elvia Bryan Rogers.'' The glued seal had been pulled open and the envelope was empty.

In the handwriting of the testatrix on another empty envelope, Exhibit No. 2, was the following:

> ''July 26, 1938
> C. H. Tyler
> If I die for nieces
> Julia Bryan L—Elvia B. Rogers
> Eliza Bryan—Cecilia Daniel
>     if alive—or divided
>     among three.''

Another envelope, Exhibit No. 3, was only endorsed

"Treasury Bonds." It had apparently never been sealed. It contained United States bonds and certificates aggregating $2,650.

Another large envelope, Exhibit No. 4, which apparently had never been sealed, bore this endorsement in the handwriting of the testatrix:

"These bought June 14, 1938
If not spent before dying
for
Eliza Bryan
Julia Bryan Livesay
Elvia Bryan Rogers
or either two
if one dead
C. H. Tyler."

This envelope (No. 4) contained bonds, principally of the United States, of the face value of $6,590.80 and the appraised value of $5,332.36.

Another envelope containing $250 was marked "for burial."

All of the above envelopes are what is commonly called "Manilla," and each could answer the description of being "a yellow envelope." There were a number of other envelopes in the box containing various memoranda and endorsements but none are pertinent to the disposition of their contents or of testatrix's property.

This suit was brought by Mrs. Cecilia Embry Daniel to construe the terms of the will, particularly Paragraph 4. Evidence was heard concerning the condition of the lock box of the testatrix and to show that the plaintiff was a favored niece. The court adjudged that there was no yellow envelope found in the box or elsewhere and, therefore, no notations or recitations by the testatrix directing any other or further gift or devise to the plaintiff as set out in Paragraph 4 of the will; hence that no effectual devise was made to her by that paragraph.

Although they might have been more accurately called "tan," it seems to us that all the envelopes may be classed as "yellow." The larger one, Exhibit No. 4, was a little lighter tan than the others. The endorsement and signature on it, as we have said, were wholly

in the handwriting of the testatrix, but the appellant insists that the memorandum merely stated the contents had been bought for the three nieces named so it cannot be considered as a will. We may for the argument accept that as the proper consideration to be given the endorsement and look to the language of the will exclusively. The several envelopes and contents are identified in that instrument as being auxiliary to and the subject of the bequests made in the will itself. We may summarize them: Envelope No. 1 omitted plaintiff's name and was empty; No. 2 included the name of the plaintiff, Mrs. Daniel, but it was empty; No. 3 containing $2,650 in bonds bore no endorsement; No. 4 containing $6,590 of securities had only the names of three nieces on it and did not include Mrs. Daniel.

The court declined to hear evidence concerning the plaintiff's financial condition and the affectionate relations existing between herself and her aunt. We think that was proper. Extrinsic evidence is admissible to show the condition of the testator and circumstances surrounding him when his will was executed in order to help in obtaining his viewpoint and if possible to explain a latent ambiguity, or to reconcile discrepancies between provisions of a will, or to identify the subject matter of a devise or the particular devisee among a class or group any one of whom meets the designation or name. Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; Muir's Executor v. Howard, 178 Ky. 51, 198 S. W. 551; Barnes v. Johns, 261 Ky. 181, 87 S. W. (2d) 387; Bush's Executor v. Mackoy, 267 Ky. 614, 103 S. W. (2d) 95; Simpson v. Simpson, 274 Ky. 198, 118 S. W. (2d) 533; Cummings v. Nunn, 290 Ky. 609, 162 S. W. (2d) 213. But extrinsic testimony is never competent to show what the testator intended to write or that he intended to omit or to include a particular person. Allan v. Vanmeter's Devisees, 58 Ky. 264, 1 Metc. 264; Gray's Adm'r v. Pash, 66 S. W. 1026, 24 Ky. Law Rep. 963. Nor is it competent to contradict, alter, add to or subtract from the instrument in order to show a different intent or an intent not expressed in the instrument. Calloway v. Calloway, 171 Ky. 366, 188 S. W. 410, L. R. A. 1917A, 1210; Eichhorn v. Morat, supra; Violett's Adm'r v. Violett, 217 Ky. 59, 288 S. W. 1016.

We look more particularly to the matter of identifying the subject of the devise or of incorporating in a will another document by reference. We have held

that the court may examine a deed referred to in a will which disposes of property according to the terms or the description of the land in the deed. Traughber v. King, 235 Ky. 658, 32 S. W. (2d) 8. If a document is clearly and definitely described by the will itself it becomes part of the will, but if there is no such deed executed but only a memoranda made by another than the testator, it cannot be received. Tuttle v. Berryman, 94 Ky. 553, 23 S. W. 345. As stated in that opinion:

"Parol testimony that changes the entire character of the instrument referred to in the will would be dangerous in its character, and enable any paper to be substituted as the one referred to by the testator.

"It is immaterial what the intention of the devisor may have been, for it is often easy to show by parol, if such testimony was admissible, that the testator intended to do that which is directly the reverse of his inention as expressed in the will itself; * * *. It was no doubt the intention of the testator to make deeds, and leave his children with a title to the land referred to in the memoranda. It was something to be executed in the future. He may have changed this purpose, and concluded to let an equal division be made, as he no doubt attempted himself to do."

Our case closest to the instant one seems to be Hughes v. Bent, 118 Ky. 609, 81 S. W. 931. The residuary bequest of the will was this: "The remainder of everything that I possess I leave as a sacred trust to my daughter, Mary C. Woolridge, know [knowing] that she will faithfully carry out my wishes regarding it." The testatrix had signed a paper written at the same time the will was written, in which she gave certain specific directions as to the use of the income and disposition of the remainder. The paper having been properly identified, it was held to constitute a part of the will. Cf. McNeill v. McNeill, 261 Ky. 240, 87 S. W. (2d) 367. In the instant case, however, we come up against the uncertain identification of the auxiliary document. The great weight of authority is that a document, although not itself executed in accordance with statutory requirements of a will, may be incorporated into a will by sufficient reference. Page on Wills, Sec. 249; 28 R. C. L. 112. In some jurisdictions it is held that an unattested paper cannot be taken as a part of a will even though it is referred to in that instrument. But as stated in Section

250 of Page on Wills: "The will itself must refer to such paper to be incorporated as being in existence at the time of the execution of the will, in such a way as reasonably to identify such paper in the will, and in such a way as to show testator's intention to incorporate such instrument in his will and to make it a part thereof. Such document must in fact be in existence at the time of the execution of the will. Such document must correspond to the description thereof in the will and must be shown to be the instrument therein referred to. These requisites must co-exist in order to incorporate a document into the will. The absence of any one of them will prevent such incorporation."

And in Section 257:

"Unless the instrument is referred to as in existence, specific identification is impossible. If, from the terms of the will, the instrument might be executed in the future, any number of instruments might be executed which would correspond to such description.

"If the will clearly refers to the document as one to be executed in the future, such document can not be incorporated by reference."

There must be affirmative evidence that a document sought to be enforced as part of the will was in existence when the will was made. Page on Wills, Sec. 260. This is obviously sound, for one cannot reserve to himself the power to modify a will by a subsequently prepared instrument not executed in the manner prescribed by the statute of wills. Simon v. Grayson, 15 Cal. (2d) 531, 102 P (2d) 1081. If we accept the dates endorsed on envelopes Numbers 2 and 4 as establishing the pre-existence of documents, with the contents as parts thereof to be considered as components of the will, they do not pass anything to Mrs. Daniel. Envelope No. 2 (the contents of which were to be shared in by her) was empty, and the endorsement does not disclose what had ever been put in it. Envelope No. 4 contained valuable bonds, but the endorsement did not include Mrs. Daniel's name. Exhibit No. 3 containing bonds has no date upon it or notation identifying it. The absence of such memorandum negatives the idea that it was the envelope referred to in the will. But whether so or not, the evidence does not identify it with the requisite clearness and certainty as being the one referred to.

The rule of resolving ambiguities or conflicting pro-

visions of a will by seeking the intention of the testator is always applicable, but in this instance we have an unusual provision declaring what the courts shall do in case there is any ambiguity in the disposition of the property. It is significant that in the last sentence of paragraph 4, she provided that: "If any uncertainty may be found to exist on account of this provision [the first part of the paragraph] I direct and devise that such uncertainty be cleared away by making equal divisions among Julia Bryan Livesay, Eliza Hawes Bryan and Elvia Bryan Rogers so as to complete the division of my estate and eliminate any possible uncertainty." It is to be noted that Mrs. Daniel's name does not appear here. There is not only "uncertainty" but chaos and "confusion worse confounded" in the contents of the lock box and the condition of the endorsements on the envelopes.

It may be true that the omission of Mrs. Daniel's name from the last sentence of Paragraph 4 was an inadvertence. But it is a rule of construction, as familiar as it is well founded, that a will is to be construed by what the testator said and not by what he intended to say—by what he meant by what he said and not what he meant to say. And as discussed and decided in the recent cases of Leroy v. Read's Adm'r, 252 Ky. 821, 68 S. W. (2d) 421, and Arnold v. Simmons' Executor, 295 Ky. 516, 174 S. W. (2d) 747, a general statement in a will yields to a specific provision omitting a devisee included in the former.

The conclusion is that the last provision in Paragraph 4 must prevail. It bequeaths the securities contained in the envelopes to the three nieces named. This is not because of the adoption by reference but because that is identified as the property covered by the bequest.

The judgment being in accord, although upon different grounds, it is affirmed.

Whole Court sitting.