## Meader's Ex'r et al. v. Old Odd Fellows and Rebekahs Home et al.

Feb. 1, 1944.

498

C. E. Rankin and I. C. James for appellants.

John M. Berry for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

James P. Meader, a resident of Mercer County, died testate in March 1943, possessed of personal property not to exceed $3,000 in value. His nearest of kin were several brothers and sisters of the half blood and two children of a half sister. In his will he made bequests of small sums to some of the half brothers and sisters, and personal bequests to others who were friends, and to a church to be put to charitable use. The residue was to be reduced to cash as soon as practicable after his death, and of the proceeds "two-thirds of the amount to go to the Odd Fellows at Eminence, Kentucky, and the other one-third to the Widows and Orphans Home, Lexington, Kentucky." By a codicil he named Charles Davis as alternative executor.

Mr. Davis qualified and took charge of the estate. Conceiving that the 14th clause of the will disposing of the residue was somewhat uncertain as to designation of beneficiaries, for his protection in the proper administration of the estate he, by way of the declaratory judgment petition, asked the court to say whether by that clause he intended two-thirds to go to the "Old Odd Fellows & Rebekahs Home," in Eminence, and the one-third to go to the "Odd Fellows Orphans Home of Kentucky," located in Lexington, or according to the contention of the next of kin the bequest is void because of uncertainty in designation of the takers, hence testator died intestate as to that portion of the estate not otherwise devised.

The petition made the next of kin defendants, as well as the two institutions particularly named above. The pleading showed that prior to 1937 (date of will) there had been and still is in existence at Eminence a branch of the fraternal society under the name of "Eminence Lodge, No. 140, Independent Order of Odd Fellows." The testator was never a member of that branch, and had no connection with it. There was at the time of the making of the will, and now, a home maintained at Eminence by the Grand Lodge of Kentucky, I. O. O. F., under the name of "Old Odd Fellows and Rebekahs Home." This institution in a small way

cares for indigent members of the fraternal order and its adjunct the "Rebekahs." Prior to 1916 there existed in Lexington a home established and maintained by the society for the benefit of its members who were eligible. This was known as the "Widows and Orphans Home," and the name "Odd Fellows Orphans Home of Kentucky" was later adopted and continued to the present.

At the time of the execution of the will the widows of deceased members have been and are cared for at the Eminence Home, and the orphans at the Lexington Home, both under the charge and control of the Grand Lodge, with authority in that body to transfer its charges from one to the other. There is and has been for a time an institution in Lexington, a home for orphan children known as the "Lexington Orphan Home," and an organization known as "Children's Home," and in the same city an "Old Ladies' Home," none of which has had any connection with the fraternal society, but maintained either by the local government or disconnected sources. There has never been, nor is there now, any home or homes of the kind or character in Eminence, save the one supra.

These various institutions were made defendants. The Fayette County Children's Bureau answered for the Lexington Children's Home and disavowed any claim under the will. Those in charge of the Old Ladies Home and the Orphans Home and the Eminence Lodge, likewise disclaimed by answer. The institution at Eminence and the one at Lexington both supported entirely by the State Grand Lodge, answered setting up the facts and taking the position stated above; the local lodge (Eminence) showed that decedent was never affiliated with its branch. The next of kin demurred to the petition; the demurrer was overruled and they traversed of record. However, their contention as to their construction of the 14th clause of the will is set forth in the declaratory petition.

Upon submission the chancellor declared that under the 14th clause it was the intention of testator to devise two-thirds of the residue of his estate to the institution at Eminence, and the other one-third to the Odd Fellows Orphans Home at Lexington. There was some proof taken, a portion of which went to the establishment of facts relating to the maintenance, operation and purposes of the institutions at Eminence and at

Lexington. Aside from such proof it was shown that testator had for a long time been a member of the branch of Odd Fellows at Harrodsburg. He was not a man of means; he worked as janitor at a bank and sometimes sold real estate on commission. He had visited the Eminence Home, and discussed with one fellow member his purpose of going there to live. He learned that in order to receive its benefits he would have to turn over to the society his property, and did not accede, but suggested that when his health got bad, or he had to quit work he would take advantage of the Home. This fraternal brother wrote his will, and said Mr. Meader told him, ''I want two-thirds of what is left to go to the Old Men's Home at Eminence, and the remainder to go to the Orphans Home at Lexington, for the children.'' The witness by avowal said he did not know the technical or corporate name of the institutions, but he ''knew them and how they worked.'' Another fraternal brother (secretary of the local branch at Harrodsburg) said he wrote to the Eminence Home for application form at the request of testator, he then saying that if he could he would leave them his property.

Counsel for appellants contend that under our rulings in respect of construction of wills, the court is confined to the language of the will and is powerless to write into a will what the testator may have intended, but did not clearly write, admitting that ''in a limited degree extrinsic evidence is sometimes permissible.'' It is correctly stated that the document must be definite and certain as to the property conveyed, the character of the interest and the beneficiary must be identified so as to allow the intention of the testator to be effectuated. Blankenship v. Blankenship, 276 Ky. 707, 124 S. W. (2d) 1060; Winn v. William, 292 Ky. 44, 165 S. W. (2d) 961, 964. Counsel argues that eliminating from the record the testimony of the fraternal brothers, there is nothing in the record to justify this court in ''reforming'' testator's will. The William case, supra, did not go into the question of admissibility of testimony. We did repeat the universal rule: ''If the intention to make a different disposition cannot be discerned from the instrument itself (other than by permissible evidence as to the particular identity of a person or property or by legitimate surrounding circumstances), of necessity the courts cannot give a will any effect and must declare it void for uncertainty.''

It may be said there is little ambiguity in the will insofar as the intention of the testator is concerned. It is not difficult to reach the conclusion that testator expressed a clear intention to bequeath to relatives and friends only that portion of his small estate manifested by the specific bequests, and no more. It is equally certain that he intended to give the residue to two charitable institutions, one located in Eminence, the other in Lexington.

There is a technical ambiguity in respect of the 14th clause, a doubtfulness, uncertainty of meaning. There exists a latent ambiguity if there be uncertainty as to the thing described, and the general rule is that extrinsic evidence may be had for the purpose of identification. 3 Wharton's Evidence, sec. 957. Lane v. Railey, 280 Ky. 319, 320, 133 S. W. 74; Owens v. Owens' Ex'r, 236 Ky. 118, 32 S. W. (2d) 731; Kentucky Christian Missionary Soc. v. Moren, 267 Ky. 358, 102 S. W. (2d) 335; Ratliff v. Yost, 263 Ky. 239, 92 S. W. (2d) 95; Childers v. Johnson's Ex'rs, 267 Ky. 657, 100 S. W. (2d) 834; Simpson v. Simpson, 274 Ky. 198, 118 S. W. (2d) 533, 535, quoting from Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013, which to our minds states the rule succinctly: "In other words, as it has often been expressed, it is incompetent, by this character (extrinsic) of proof, to show what the testator intended to say, but did not, but it may be shown what was intended by what he did say."

In the light of these frequently announced principles we have no difficulty in reaching the same conclusion as did the chancellor, and the judgment is affirmed.