CASE 83—PETITION EQUITY—APRIL 26.

# McBrayer, Ex'or, v. McBrayer's Ex'trix.

APPEAL FROM ANDERSON CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE — PROHIBITION OF USE OF TESTATOR'S NAME IN CONNECTION WITH DISTILLERY.—Where a testator, who owned a large distillery which he devised to his infant grandchildren, provided that the distillery should be operated by his executors for three years after his death in order to pay various bequests made by his will, "after which time I desire that my name be extinguished from the business," the words quoted were not intended to prohibit the devisees from using a valuable trade-mark of which the testator's name formed a part, and which he had used for many years, but merely to·prohibit the use of his name in the operation of the distillery, after the expiration of the three years, in any way that might make his estate liable.

2. SAME.—EXTRINSIC EVIDENCE AS TO TESTATOR'S INTENTION.—What the testator may have said before or after the making of the will can not be looked to in its construction. The will must speak for itself.

3. SAME.—While the court perceives nothing illegal or contrary to public policy in a prohibition by the testator of the use of the trade-mark or of the use of his name in connection with the manufacture of whisky, it is not necessary to determine the question as to the validity of such a prohibition.

4. SAME.—A provision in the will that if at any time the executors shall disagree as to the best method of settling up, managing and disposing of the testator's estate, the view held by the widow "shall in all cases be adopted," does not authorize the executors to adopt the widow's construction of the will without regard to the intent of the testator.

HUMPHREY & DAVIE for appellant.

1. The proper construction of the will is that the testator wished his "business" to be carried on in his name, and at the risk and profit of his estate, for three years after his death; and then the "business" was no longer to be carried on as his, and at the risk of his estate. It does not require a destruction of the value of the distillery by the destruction of its name and trade-mark.

2. The acts of the testator, in operating the distillery himself, under its name of "W. H. McBrayer Cedar Brook Distillery" for two years after writing his will and up to the day of his death, and in providing for its operation in his name by his son-in-law for three years after his death, and in devising it to his heirs to be operated afterward by them, show that he did not write his will under any "remorseful conscience" against his life-work of distilling, nor from any fear that his son-in-law or his descendants would "injure his reputation" as a distiller.

3. There is nothing unlawful or against public policy or deceptive to the public in his heirs calling their distillery, and branding its product, with the distillery's name, "W. H. McBrayer Cedar Brook Distillery;" the "business" of distilling and selling being carried on by his heirs, in their own names, and at their own risk. (Dant v. Head, 90 Ky., 261; Hageman v. Hageman, 8 Daly, N. Y., 10; Codding-ton's Digest Trade-marks, secs. 12, 21, 165; Pepper v. Labrot & Graham, 3 Ky. Law Rep., 125; Leather Cloth case, 11 House of Lords Cases, 523; Kidd v. Johnson, 100 U. S., 617; Pratt's Appeal, 2 Am. St. Rep., 679; LePage v. Russia, 51 Fed. Rep., 941.)

4. To forbid the descendants of Judge McBrayer from using the distillery's name and brand, would simply throw it open to the public to adopt and make inferior whisky under that brand; a thing the testator could not have intended. (Clark v. Freeman, 11 Beavan, 112; Levy v. Walker, Law Rep., 10 Chancery Division, 436; Day v. Brownrigg, Law Rep., 10 Chancery Division, 294.)

5. The language of the will, with regard to the use of the testator's name, is directory, not mandatory. (2 White & Tudor's Leading Cases in Equity, 859; Farris v. Rogers, 9 Ky. Law Rep., 912; Jarman on Wills, vol. 1, p. 682, note.)

6. To construe the will as directing the distillery of the heirs to be dismantled of its name, and as requiring their trade-mark to be destroyed, three years after the testator's death, would be to make the will interfere with the essential enjoyment and use by the heirs of their property, and such interference would be repugnant and void. (Coffman v. Coffman, 17 Am. St. Rep., 70; Boiseau v. Aldridge, 27 Am. Dec., 595; Jarman on Wills, R. & T.'s edition, vol. 1, pp. 619, 620, vol. 2, pp. 526, 538; 4 Kent's Comm., 131; Woerner's Law of Administra-tion, vol. 2, secs. 441, 442; Connor v. Couch, 141 U. S., 317; Beach on Wills, secs. 228, 241; Redfield on Wills, vol. 2, p. 287.)

McBrayer, Ex'or, v. McBrayer, Ex'trix.

7. In case of doubt, the will should be construed in the way that will pre-
   vent hardship and prevent the destruction of the estate of the infants.
   (Brearly v. Brearly, 9 New Jersey Equity; 1 Stockton, 21; Beach on
   Wills, sec. 317.)

L. W. McKEE of counsel on same side.

D. W. LINDSEY for appellee.

1. The intention of the testator was that after the expiration of three
   years from his death his name should not appear upon or in connection
   with the distillery or the whisky thereafter made, or in any manner
   in the business, and such is the meaning of the words used.
      In construing a will greater regard is to be had to the clear inten-
   tion of the testator as gathered from the whole instrument than to any
   particular words used in the expression of that intention. (Ford v.
   Buch, 11 Q. B., 864.)
2. The condition imposed is not repugnant to the estate devised, nor is it
   contrary to public policy. (Bassett v. Budlong, 18 Am. St. Rep.,
   404; Plumb v. Tubbs, 41 N. Y., 442; Sutton v. Head, 86 Ky., 156;
   Grundy v. Edwards, 7 J. J. M., 368; Turner v. Johnson, 7 Dana,
   435; Printing and Numerical Registering Co. v. Sampson, 19 Eq.,
   462-465.)
3. If a legatee upon condition accept the legacy and enter into possession,
   he must perform the condition, however burdensome. (2 Redfield on
   Wills, chap. 2, sec. 3, p. 281.)
4. The trade-mark was but an incident of the distillery and could not
   have been devised by the testator separately. Therefore, to forbid its
   use is not to destroy property. (Manhattan Medicine Co. v. Wood,
   108 U. S., 223; Dixon Crucible Co. v. Gugenheim, 2 Brewster, 321;
   Lockwood v. Bostwick, 2 Daly, 521.)
      Kidd v. Johnson, 100 U. S., 617, explained.

W. LINDSAY of counsel on same side.

JUDGE PRYOR delivered the opinion of the court.

This action was instituted in the court below for a con-
struction of the ninth clause of the will of Judge W. H.
McBrayer, of Anderson County, who died on the 6th of
December, in the year 1888.

He left surviving him his widow, who is the plaintiff in
the action and the appellee in this court. She qualified
as executrix, and also his son-in-law, D. L. Moore, quali-
fied as executor.

The testator had but one child, a daughter, who died before the testator, leaving three children—Mary, Wallace and William Moore—and these children, by the provisions of the will, are made the principal objects of his bounty. Their father was D. L. Moore, who was left as executor to manage the estate in conjunction with the widow of the testator.

He made a liberal provision for his wife, and also bequests of much value to his son-in-law and to his collateral kindred.

At the time of his death, and for many years prior thereto, he manufactured and sold whisky at his distillery in the County of Anderson. Its product was much used, and the trade-mark on the barrels so extensively known as to give the use of the trade-mark itself a value of not less than $25,000 a year. The trade-mark was "W. H. McBrayer Cedar Brook Distillery," and of the value, as conceded by the pleadings, of a sum exceeding $200,000.

The testator's property, when the specific devises were paid, consisted almost entirely of this noted distillery, and this, by the residuary clause of the will, passed to his infant grandchildren.

He had made a contract sometime before his death with Levy & Bro., of Cincinnati, by which he sold them all the whisky distilled and to be distilled at the "Cedar Brook Distillery" between December 1, 1886, and December 1, 1891. This contract had to be complied with, and not only so, it was evident the distillery had to be operated in order to raise the money to satisfy the specific devises made to his kindred other than those who were his direct descendants. The distillery was operated under his own supervision for more than a year after the will was writ-

ten, and by its provisions it was to be operated by his executor for *three years* from the time of his death.

He was a man of large business experience and knew the necessity of having the distillery carried on by his executor until from its products the executor could discharge the burden upon his estate imposed by the provisions of his will. With this in view we find the ninth clause of the will, now the subject of construction, to read as follows: "It is my will that my Cedar Brook Distillery shall be operated by my executors for *three* years after my death in order to carry out the bequests of this will, *after which time I desire that my name be entirely stricken from the business,* and my executors are hereby invested with all the rights, title and interest in said property necessary to the operating of the same, so that no trouble will or may be had with the Government of the United States by reason of my said executors operating said distillery after my death."

By the thirteenth clause it is provided that "If at any time my executors shall disagree as to the best method of settling up, managing and disposing of my estate, the view held by my said wife shall in all cases be adopted, it being my desire to give her prominence and priority in everything that pertains to my estate."

It is claimed by the widow—and such was the ruling of the chancellor below—that by the provisions of the ninth clause of the will the trade-mark or brand attached to the product of the distillery, viz.: "*W. H. McBrayer Cedar Brook Distillery,*" could not longer be used by his grandchildren in the manufacture or sale of the whisky at said distillery or elsewhere because of the provision in the ninth clause of the will of the testator, by which the

distillery is to be operated for three years by his executors after his death, to carry out the bequests of the will, "*after which I desire that my name be entirely stricken from the business.*" It is insisted, from the language used, the purpose of the testator was that the name of W. II. McBrayer should no longer be connected with the distillery, and the trade-mark that gave the product of the distillery and the devise its chief value was thereby destroyed. In other words, the true meaning of this ninth clause is that after the expiration of the three years from the death of the testator his name was not to appear as a part of the brand or trade-mark and to be in no manner connected with the business.

On the other hand it is contended for the appellants the testator's meaning was that after the expiration of the three years (the time in which the distillery was to be operated by his executors), his estate or his executors should no longer conduct the business by using his name so as to make his estate liable, etc. It is again argued that the name "W. II. McBrayer Cedar Brook Distillery," is a valuable property right, which neither the executors nor the testator himself could destroy, and for that reason it passed to the devisees.

It is not necessary, in view of the conclusion reached, to determine the right of the devisor to prohibit the use of the trade-mark, or that of his name, in the manufacture of whisky by those to whom he devised the distillery, and while we perceive nothing illegal or inconsistent with public policy in such a prohibition, although made a condition upon which the devise is to take effect, it is not required that this question should be further considered.

The testator could have had no conscientious motives

prompting him to restrict the devise. He had been a distiller for many years and had, without doubt, devised to these grandchildren the distillery property that it might be used and operated for the purpose of making whisky, and if regarded by him as an evil he would not knowingly have vested them with the title to property which, when applied to its proper use, would have produced that which the testator was not willing to have his name associated with in any form. He was a man of intelligence and of much experience in the business affairs of life, and in the construction of his will we must look to the language used and the circumstances surrounding him as gathered from the writing itself in order to determine his intent and purpose when using the language found in the ninth clause of that instrument. He knew that to give to his executors as such the unlimited power as to time in which to operate the distillery might involve his estate largely in debt, and looking to the liabilities or the burdens he had placed upon the estate by the various bequests made, and knowing the capacity of his distillery, supposed that in three years from his death, with proper management by his executors (in whom he seems to have had the greatest confidence), the distillery would relieve his estate of the burdens upon it, and after that period he did not desire the business to be continued *in his name by his executors*, as it might result in financial disaster instead of a benefit to those interested.

His reputation, or that of his distillery, for making good whisky had been established, and the trade-mark placed upon the barrels of whisky made from the distillery after his death, although of an inferior quality, could not have affected the whisky, or its reputation, made and

sold by the testator in his lifetime, and, therefore, it was not to save the reputation of his distillery or the whisky (as was argued by counsel) that this prohibition of the use of his name was intended. What the testator may have said after or before the making of his will can not be looked to in its construction. In a case like this the will must speak for itself, and no intent inconsistent with the language used, or in conflict with a rational construction of the will, should be adopted.

It required a large expenditure of means to keep the distillery in successful operation. Many risks had to be assumed by his executors during the period they were required to make whisky. There was no direction, by implication or otherwise, by which the executors were required to convert the distillery into another and different manufactory, or any devise to the effect that the trademark or brand should never be used by his grandchildren or their vendors. What did the testator then mean when saying that after the expiration of the three years "*I desire that my name be entirely stricken from the business*"? What business? The business of making whisky by my executors. His wish was that no greater risks should be assumed by his estate or liabilities incurred for which his estate could be responsible after that time.

Conceding, however, for the purposes of this case and in the discussion of the questions involved, that there is an ambiguous meaning in the language used, that it is susceptible of two constructions, one of which will destroy, to a great extent, the value of the property, and another leaving it in the condition it is found at the expiration of the three years, relieved of all the burdens placed upon it by the testator, it will be seen at once the chancellor will

adopt that construction most favorable to the appellants when it can work no injury to the dead, and is entirely consistent with the intention of the testator gathered from his own language when making the devise.

A man of the intelligence and business capacity possessed by the testator, if he had desired to stop the making of whisky in this distillery, would have said so, but, on the contrary, he devises it to his descendants for the very purpose for which he had used it so many years, and if his wish was to destroy his trade-mark so as to lessen the value of what he had devised, or to sustain his reputation for making good whisky, he would have said so in express terms and by language that could have no dubious meaning. He could have had no such religious or conscientious scruples as would have induced him to say that his name should no longer be connected in any manner with the distillery, because he had placed that which produced the evil in the hands of infants innocent of wrong, but for the very purpose of producing that out of which his entire fortune had been made. He was, doubtless, an honest, conscientious man, as counsel maintain, and if so, he would not have enabled, by his last will, his grandchildren to engage in a business that he had abandoned by reason of the evil resulting from it.

It is plain to us that when the testator wanted his name entirely stricken from the business, his meaning was the business of making whisky in his name by his executors for his estate, and that the value of the trade-mark, or the right of property in it, devised to his grandchildren was not the subject of consideration by him when making the devise. With this construction the personal and business integrity of the testator is made manifest and carries into

execution an intent that comports with the character of the man, the language of the will, and sustained by every rational view of the question presented.

The thirteenth clause of the will authorizing and requiring the views of his wife to be adopted as to the method of managing, settling up and disposing of the estate when the executors differ, will not authorize a construction of the will as given by the widow to be followed so as to destroy the devise or change the intent of the testator.

The judgment of the chancellor below is reversed, and the case remanded, with directions to enter a judgment to the effect that the brand or trade-mark, "W. H. McBrayer Cedar Brook Distillery," passed under the devise to the grandchildren of the testator and is their property.