## Ratliff v. Yost et al.

(Decided March 13, 1936).

240

STRATTON & STEPHENSON for appellant.

O. T. HINTON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Richard H. Ratliff of Shelbiana, Pike county, Ky., died testate in 1928, leaving surviving him Orpha Ratliff, his widow, Rebecca Morris and Mattie Fiddler, his

daughters, and W. E. Yost, a grandson and only child of Polly Yost, a predeceased daughter.

By the provisions of this will, testator devised all of his estate "of every kind and character," absolutely in fee simple as follows:

"First: One fourth (¼) to my beloved wife, Orpha Ratliff.

"Second: One fourth (¼) to my beloved daughter, Martha Fiddler.

"Third: One fourth (¼) to my beloved daughter, Rebecca Morris.

"Fourth: One fourth (¼) to my grandson, Willie Yost, the only son of my beloved daughter, Polly Yost, deceased."

After thus declaring his wish that his estate be equally partitioned between his named devisees, he further expressly directed

"that in the division of my real estate in accordance with my above bequest, the share of my beloved wife, Orpha Ratliff, shall be laid off so as to include the home place where we now reside, that is to say, the residence, yard, gardens and outbuildings used in connection therewith and occupied by myself and wife as our home."

The testator, at the time of his death, owned a very large boundary of land, containing some 1,553 acres, situated in Pike county at Shelby, where was located the junction station of the C. & O.'s Big Sandy and Jenkins branches. On the lower end of this 1,500-acre tract, next the town and station, the testator and his wife, Orpha Ratliff, had lived for some fifty years, using and occupying that part of his lands, for what he termed his "home place."

It further appears that testator had been married twice and that Martha Fiddler and Polly Yost (the deceased mother of Willie Yost) were the issue of his first marriage and that Rebecca Morris was the issue of his second marriage with the appellant, Orpha Ratliff.

J. M. Morris and J. M. Yost were named as executors under the will and duly qualified as such October 1, 1928.

On December 20, 1933, the appellant, Orpha Ratliff, brought this suit in the Pike circuit court against her codevisees W. E. Yost, Mattie Fiddler, and Rebecca Morris (her daughter), seeking a division of the estate.

The appellees filed answer and cross-petition, making the executors parties to the suit, and asked that a settlement of the entire estate be made. The devisees concluding, however, that their interests in the land's mineral deposits of coal, oil, and gas would be best served by continuing to hold and handle same together as one jointly owned property, they agreed that they would so hold them without division.

Also, the devisees having agreed upon a satisfactory settlement of the personal estate with the executors, and same having been made by them, we are now (these questions having been thus eliminated) here concerned only with the remaining question as to whether the division of the surface lands, as laid off to the appellant and other devisees by the commissioners, as reported and approved by the court, over appellant's exceptions thereto, was a fair and proper allotment of an equal one-fourth interest in these lands between the four devisees, in kind, .quality, and value, and made according to the express provisions of the will, directing that the "home place" should be included in the allotment made appellant.

Appellees' answer and cross-petition admitted, as alleged in the petition, that the surface of this large tract was susceptible of division, without impairing the value of their interests, but denied that it could be divided into only four boundaries, so as to give to each of the devisees an equal part or share of the whole in one boundary, considering quality, quantity, and value, by reason of the topography of the land, the location and grouping of the various parcels of this large tract relative to the town of Shelby, which rendered it necessary, they contended, in order to effect an equal division in value of this entire tract, to subdivide it into more and smaller parcels than proposed by appellant, so as to give each of the devisees both a portion of the bottom land and of the hill or mountain land.

· Issues were joined on this question of what, under these conditions, and having due regard to the direc-

tions of the will that the equal one-fourth share allotted appellant should include the "home place," by which description appellant contends testator meant to devise her all the contiguous lands used by him in connection with and as a part thereof, was the proper method of dividing them.

In April, 1934, an agreed court order was entered, appointing O. S. Batton, Richard Thompson, and Jerry M. Robinson commissioners, to make division of the land, in accordance with the provisions of the will, and authorizing them to employ a surveyor or surveyors for such purpose.

In July, 1934, the commissioners filed their report, showing a division made by them of the land into seven different parcels.

Pursuant to such division, they reported that by their allotment of these seven parcels made between the devisees, there was given to the appellant, as her one-fourth equal part of the land, 137.51 acres (tract No. 3) in one boundary, which included therein "the residence, yard, gardens, and outbuildings used in connection therewith" as was by the will expressly directed; to W. E. Yost tract No. 1, containing 9.13 acres of bottom land, and tract No. 1-a, containing 424.18 acres of hill land; to Rebecca Morris tract No. 2, containing 11.42 acres of bottom land, and tract No. 2-a, containing 527.20 acres of hill land; and to Martha Fiddler tract No. 4, containing 206.32 acres, and tract No. 4-a, containing 237.32 acres.

Further, the commissioners reported numerous exclusions made from the boundaries of the above-allotted seven parcels of land due to their having been made and conveyed by the testator therefrom. Also, the commissioners reported that for performing their duties, it was necessary to engage the services of a civil engineer for surveying and laying off the large tract into the seven partitioned parcels, which work was done under the direction of the commissioner, O. S. Batton, for which he reported an expense incurred amounting to $277; that it was further necessary to engage the services of an attorney to assist them in determining what lots and parcels of land had been sold from the testator's original boundary, which had to be consid-

ered and were to be excluded from the boundaries allotted devisees, and for this legal service they recommended payment of $75 to the attorney so employed, as covering his fee asked therefor. Further the commissioners reported and asked that for the services rendered by each of them and for expenses incurred in performing thir duties as commissioners they be allowed the respective amounts as follows:

| Commissioner | Services | Expenses |
|---|---|---|
| O. S. Batton | $35.00 | $19.40 |
| Jerry M. Robinson | 95.00 | 40.00 |
| Richard Thompson | 65.00 | —— |

The appellant, being dissatisfied both with the apportionment of the land as made her by the commissioners and with the allowances made by them, filed exceptions to the report, complaining both of these charges asked by them, and also that by the reported division of the land she was allotted less than an equal one-fourth share in value, due, she alleged, to the fraud and collusion between the attorney for appellees and the commissioners resulting in their favoring his clients. She further complained that the express directions of the will had not been followed in laying off but a part of the land devised her.

Response was filed to these exceptions, denying the grounds upon which same were based.

Upon the case coming on for hearing before the Honorable W. K. Steele, presiding as special judge, on these exceptions of appellant to the commissioners' report as to the division and allotment of the land, the alleged fraud affecting same, and the costs incident thereto, the court, after hearing proof in open court thereon and argument of counsel, sustained same in part as to the allowances asked, but otherwise confirmed the report and adjudged that:

"It appearing that the plaintiff, Orpha Ratliff and Mrs. Rebecca Morris are insisting on the exceptions to the claims of the commissioners and to the claim of O. T. Hinton, attorney, for services rendered to the commissioners, and that the defendants, W. E. Yost and Mattie Fiddler, are not contesting said claims, the exceptions above men-

tioned are sustained in part and overruled in part as follows:

"The exceptions to the claim of O. T. Hinton is sustained to the extent of reducing same to the sum of $37.50 to be paid by W. E. Yost, and Mattie Fiddler jointly and equally.

"The exceptions to the claim of Katherine Bentley for the sum of $19.40 is overruled, same to be paid by all four of the devisees jointly and equally.

"The exceptions to the claim of O. S. Batton, engineer, for 18 days at $12.50 per day is sustained and he will be allowed the sum of $10.00 per day for 18 days, making a total of $180.00 to be paid by the devisees jointly and equally.

"The exceptions to the claim of Ted Coleman for $30.00 and the claim of Ernest Coleman for $18.00; to the charge for blue prints of $4.78; to the claim of Jerry Robinson for transportation for $40.00 are each and all overruled and will be paid by the devisees jointly and equally.

"The exceptions to the claim of the commissioners for services are sustained to the following extent, to-wit:

"The claim of O. S. Batton for 3½ days at $10.00 per day is reduced to $22.75, $17.50 of which is to be paid by W. E. Yost and Mattie Fiddler, jointly and equally, and $5.25 of which is to be paid by Orpha Ratliff and Rebecca Morris jointly and equally.

"The claim of Jerry M. Robinson for 9½ days at $10.00 per day is reduced to $61.75, $47.59 of which amount is to be paid by W. E. Yost and Mattie Fiddler, jointly and equally and $14.25 of which shall be paid by Orpha Ratliff and Rebecca Morris, jointly and equally.

"The claim of Richard Thompson for 6½ days at $10.00 per day is reduced to $42.25, $32.50 of which shall be paid by W. E. Yost and Mattie Fiddler, jointly and equally, and $9.75 of which shall be paid by Orpha Ratliff and Rebecca Morris jointly and equally.

"All other costs of this action shall be borne by the devisees jointly and equally.

"In all other respects it is adjudged that said exceptions be and they are hereby overruled."

The appellant here seeks a reversal of this judgment, assailing it upon the grounds: (1) That the commissioners and court erred in their interpretation and construction of the will, in making and approving the small allotment of tract No. 3 as comprising the "home place" given her, in that, by the use of the phrase, the "home place" the testator intended to include, as connected therewith and as a part thereof, the adjoining cow pasture, hog lot, lands leased for an oil and gas station, and the tenant house, and in fact all of the land bordering on Shelby creek, which, though used as and declared to be a part of it, had not been allotted her, but were given the other devisees in violation of the will as tract No. 1 was in the division allotted to W. E. Yost and tract No. 2 to her daughter, Rebecca Morris; (2) that tract No. 3 allotted to the appellant was not a fourth share, equal in kind, quality or value with the parts allotted the other devisees; (3) that there were improper charges embraced in the report which were allowed and taxed as costs; and (4) that there was collusion and fraud between the commissioners and the attorney for appellees, which influenced them and resulted in their making this unequal and inequitable division and allotment to appellant.

Considering these contentions in the order made, the first is that the commissioners erred in their interpretation of the provision of the will, directing that in the division of the real estate among the devisees, the share of appellant "shall be laid off so as to include the home place where we now reside, that is to say, the residence, yard, gardens and outbuildings used in connection therewith and occupied by myself and wife as our home."

To uphold this contention, appellant sought to introduce in evidence declarations made by testator as to what lands and boundaries were meant and intended by him to be designated and embraced by the words, his "home place," for the purpose of so extending this language of the will as to embrace the farming lands

adjoining the "home place", even though contrary to its scope and identity as defined by its context, excluding them therefrom.

In volume 94 A. L. R., pages 26 to 293, is given a very extensive and comprehensive annotation setting forth the incompetency of extrinsic evidence for aiding in the construction of the language of a will where it is not ambiguous. On page 31 of said volume, the general rule against varying or adding to the terms of a will, where unambiguous, by extrinsic evidence is thus stated:

"The general principle is well settled that extrinsic evidence is not admissible to vary, contradict, or add to the terms of a will, or to show a different intention on the part of the testator from that disclosed by the language of the will,"

the reason being that language which is itself plain of meaning needs not the aid of construction to determine it.

The rule is also thus stated in 28 R. C. L. 268:

"Evidence as to the intention of a testator separate and apart from that conveyed by the language used in the will is not admissible for the purpose of interpreting the will. Extrinsic evidence cannot be heard to alter, detract from or add anything to the provisions of a will, or to explain or contradict its contents. * * *"

Supporting this principle there is given on page 33, volume 94 A. L. R., a very extended list of the decisions of this court.

Notwithstanding such rule of exclusion, appellant contends that it was here competent to show that the testator, by directing that the "home place" be allotted to her, intended to give her these adjacent tracts, described in the report as tracts Nos. 1 and 2, allotted to others of the devisees. The attesting witnesses to the will stated that the testator at the time of their attesting his will stated to them what lands he meant to designate by the descriptive term, his "home place," as used here by him, and premises "used in connection therewith;" that it was to include these outlying lots or tracts in issue, which he wished to be kept as the "home place."

▉ Whether or not evidence of this kind should be introduced to explain or clarify a will depends upon whether or not the language of the will itself is ambiguous, it being well settled that extrinsic evidence is generally not admissible to control the construction of an unambiguous will, or to vary, contradict or add to the terms of a will, which principle applies a fortiori where the evidence offered consists of the testator's declarations of intention. Carroll v. Cave Hill Cemetery Co., 172 Ky. 204, 189 S. W. 186; Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; McBrayer v. McBrayer's Ex'x, 95 Ky. 475, 26 S. W. 183.

Had the direction of the will only been that the testator's "home place" was to be allotted in the division of his land to his widow, appellant's contention, that testator's declarations or other evidence as to what was his intent and meaning in using such phrase would be admissible to show and identify what lands were designated and meant to constitute his "home place," we deem would be meritorious, as in such case it has been held both by this court and generally that extrinsic evidence is admissible to determine what land was included in a devise of testator's "home farm" or "home place," for the reason that such phrase, without defining context, is ambiguous. P. Simer v. Steele, 106 S. W. 851, 32 Ky. Law Rep. 647; Noel v. Jones, 185 Ky. 835, 216 S. W. 98. Also, see, Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; Taylor v. Boggs, 20 Ohio St. 516; Thomas v. Summers, 189 N. C. 74, 126 S. E. 105. The holdings in the above cases are all to the effect "that parol evidence is admissible to enable the court to identify the property intended to be given by the will, or to assist it in determining the quantum of interest which is to pass by the will." 28 R. C. L. 277.

However, the testator having here not only directed that his "home place" should be given to his wife, but further stated of what it should consist by the added parenthetical phrase, "that is to say, the residence, yard, gardens and outbuildings used in connection therewith," clearly no latent ambiguity existed as to what lands were embraced in the phrase "home place." If he had gone no further than to direct that his "home place" should be given to his wife, the rule announced in the cited cases would be here applicable for identi-

fying the property and its quantum. However, the will under construction does not stop merely with the direction that the "home place" shall be allotted to the wife, but continues, by the added express words of the provision, to designate and expressly define what the "home place" phrase, as used by testator, was intended to represent and include.

The added language of the provision thus having made explicit and unambiguous the testator's intention as to the quantum of the property devised his wife as his "home place," the rule that extrinsic evidence as to testator's intention is inadmissible for making plain that which by the will itself is clearly made plain is here applicable.

Appellant's second contention, that the allotment of the land given her was an unfair and unequal one, the quantity, quality, and value of the whole tract being considered, is also, we conclude, not to be sustained.

Having determined that no particular part of this tract, other than that expressly named and directed by the language of the will, was to be given appellant, the commissioners were authorized, under the court's direction, to allot appellant such other part of the large tract as would, together with the "home place" assigned her, represent in their judgment a fair and equal one-fourth part of the whole body of land and at the same time give larger parts of it, reasonably deemed to be of like or equal value, to the other devisees. There is sufficient showing made by the evidence that the commissioners did discharge their duty to make what they believed was a fair and equal apportionment of the land, and the evidence, while somewhat conflicting on this point, is yet sufficient to amply support the chancellor's finding that the portion of the land allotted appellant represents a fair and equal one-fourth part of it in quantity, quality, and value, and that same was not rendered an unfair or biased allotment merely because the commissioners awarded to other of the devisees lots Nos. 1 and 2, adjacent to the "home place" awarded her, and as to which she contended she was entitled as embraced within the "home place."

In making partition, the equitable rule is to lay

off a portion to each party adjoining land owned by him, if possible, without material injury to others, or, if impossible, to so allot the land as to serve the best convenience of all. Section 499, Civil Code of Practice; Howard v. Long, 238 Ky. 822, 38 S. W. (2d) 951. Here there is ample evidence supporting the chancellor's finding that the commissioners endeavored to observe and follow this rule.

As said in Lang v. Constance, 46 S. W. 693, 20 Ky. Law Rep. 502, a report of division of land by disinterested commissioners will not be set aside as unequal where the testimony, though conflicting, is sufficient to support it. See, also, Meade v. Meade, 101 S. W. 330, 31 Ky. Law Rep. 70; Heard v. Cherry, 150 Ky. 318, 150 S. W. 361; Kennedy v. Kennedy, 186 Ky. 549, 217 S. W. 891.

Appellant's further complaint is directed at the admitted fact that the attorney for the appellees, the Honorable O. T. Hinton, went upon the lands with the commissioners, when making an apportionment of them, and from this circumstance she contends that he, while then purportedly advising them as to the exclusions that should be made out of the allotted divisions of the land, also wrongfully, at such time, influencd and biased them in favor of his clients, the appellees, and caused them to make an unequal and unfair allotment of shares to them to the prejudice of appellant. She insists that the attorney's conduct in going with the commissioners at such time was improper and gained for appellees a fraudulent advantage, preventing appellant's receiving a fair and equal division of the land.

■ ■. Against such claim of improper conduct, however, is the testimony of appellant's son-in-law, J. M. Morris, one of the executors, who testifies that he was present upon the occasion when Mr. Hinton rendered this certain service to the commissioners and that he saw or witnessed nothing improper said or done by him or any conduct calculated to improperly influence them against making fair division of the land. Neither does appellant by any witness or proof indicate any instance of improper conduct by Mr. Hinton. Such being the case, we are of the opinion that, no instance

of fraud being shown and fraud never being presumed, it results that there is no merit in this contention. Long v. Howard, 260 Ky. 323, 75 S. W. (2d) 742; Dennis v. Thompson, 240 Ky. 727, 43 S. W. (2d) 18.

 Appellant's final complaint relates to service and expense charges reported by the commissioners, which were allowed to be taxed as costs by the court. The first charge attacked is the allowance made for the commissioners' services, for which they claim at the rate of $10 per day. Reference to the judgment set out supra, however, shows that so far as the objectors, appellant and Mrs. Morris, are concerned, the charges of the commissioners were reduced to the sum of $1.50 a day. As this is all of the commissioners' charges for service which they are called on to pay, they should not be heard to complain of charges allowed them. The appellees, Mrs. Fiddler and Mr. Yost, did not object to the charge made by the commissioners as unreasonable for the services rendered, and they with their consent were adjudged taxed with the extra charge. Neither, we may here add, do we conceive, as argued by appellant, that the very fact that the appellees failed to object to the charges made is, in itself, an indicia of fraud or undue advantage having been gained by appellees at the hands of the commissioners, nor can such fact alone be considered as having improperly influenced them to fraudulently favor appellees in their allotments.

Also, appellant complains of the engineer's bill for services, that is, of Mr. Batton's charges made of $12.50 a day for 18 days for the authorized and directed surveying of this 1,500-acre tract of mountain land. The court reduced the charge to $10 a day or to $180, as being a reasonable charge for the difficult service rendered. Also, the court allowed, over appellant's exceptions, the charge asked for stenographic services rendered the commissioners of $19.40 in reporting their allotments made of the seven separate parcels to which appellant excepted, criticising it as an unnecessary and improper service and an unauthorized expense incurred by the commissioners, for which no allowance should be made. The chancellor held both the service and charge to be proper and reasonable.

 While we do not find express warrant in the

statutes for the allowance asked for this surveying charge or for stenographic services, we yet are not inclined to regard the amounts allowed therefor as unreasonable or improper considering the arduous character, as well as the extent, of the surveying here done of this mountain land, and all of which led to the making of a voluminous and extended report reasonably requiring stenographic services for its proper presentation. We do not regard the error of these allowances, if such, as being of such amount or magnitude, when considered in connection with all the facts of the case, as to have prejudiced, by their allowance, any substantial rights of the appellant, entitling her to a reversal of the judgment, when such complaint is viewed in the light of section 756, Civil Code of Practice, providing that a judgment shall not be reversed or modified, except for an error prejudicial to the substantial rights of the party complaining thereof. Edwards v. Cave, 150 Ky. 272, 150 S. W. 369; Honaker v. Honaker, 182 Ky. 38, 206 S. W. 12; Reasor v. Paducah & Illinois Ferry Co., 164 Ky. 411, 175 S. W. 632; Wilson v. Caughlin, 187 Ky. 221, 218 S. W. 1010. Further, we may add that we have not calculated just what the exact statutory charge would be for the surveying services here rendered, in surveying this extensive boundary and the several parcels into which divided, if strictly computed according to the provisions of the statute, but question if the same would very materially differ from the allowance here made by the learned chancellor therefor, and we thus feel unauthorized to reverse the judgment for such a small amount under the maximum ''lex de minimis non curat.''

Therefore, after a careful consideration of appellant's several grounds of complaint here presented our conclusion is that the same are not meritorious. The learned chancellor's decree being in accord with our views, the same is affirmed.