## West et al. v. Hardwick's Ex'r.

March 23, 1948.

B. J. Bethurum and C. Homer Neikirk for appellants.

W. N. Flippin for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is the second appeal of this case, for the first appeal, see West et al. v. Hardwick's Ex'r et al., 301 Ky. 312, 191 S. W. 2d 385. Since the opinion in the former appeal sets out the complete provision in the will of Lizzie Duncan Hardwick to be construed and on which the controversy hinges, it will not be recopied here. Neither will the facts in the case, stated in the former opinion, be restated here except such as may be necessary to understand the present case. The following statement of facts appears to be necessary.

We lift from the complete clause of the will copied in the first opinion the following excerpt, the proper construction of which was and is the only question involved on the former appeal and in this one: "I will

and bequeath * * * to my brother, sisters, nieces and nephews, then living at the time of my death, * * * all of my estate or money of which I am possessed at the time of my death, same to be equally divided among them." At the time of her death, decedent left only one brother and two sisters, all of full blood, and no brothers or sisters of the half blood. She did leave numerous nieces and nephews both of the full blood and of the half blood, all of whom are appellants or appellees in this appeal. The sole question involved in the first appeal, as in this one, is this: Did testator by using the words "nieces and nephews" mean to include nieces and nephews of the half blood, as contended by appellees, or did she mean to include only the nieces and nephews of the full blood, as contended by appellants?

The answer to this question depends upon the further question, whether or not the will is ambiguous. If the quoted words used by the testator are ambiguous, then extrinsic testimony should be admitted, as contended by appellants, for the purpose of ascertaining the persons intended to be included in and covered by the words used. If the quoted words are not ambiguous, then extrinsic testimony is not admissible to ascertain the intentions of the testator, and the words used would cover nieces and nephews of both the half and full blood, as contended by appellees.

It will be necessary to make some analysis of the opinion on the first appeal of this case in order to determine the grounds for that reversal and to determine to what extent the "law of the case" rule controls or affects our decision on the present appeal. It will be seen upon examination that the first paragraph of that opinion contains this statement: "In addition to Mrs. Hardwick's husband, she left surviving her a full brother, two sisters, a number of whole blood nieces and nephews, and *several brothers and sisters* and numerous nieces and nephews *of the half blood.*" (Italics ours.)

The words "several brothers and sisters of the half blood" were erroneous and it appears now that there was no justification for their inclusion in the opinion. There was nothing in the will to indicate that decedent had any half brothers or sisters living when she executed the will, but there were some statements

in the pleadings which might have been, and evidently were, so construed by the writer of the opinion in the first case. At any rate, the statement was made in the first opinion that decedent left a full brother and several half brothers when, as a matter of fact, she left no half brothers but only a brother, as stated in her will. The court then proceeded to its decision and predicated that decision on the theory that inasmuch as decedent had referred in her will to "my brother" and inasmuch as she had left several half brothers, as erroneously stated in the opinion, it was necessary to admit extrinsic evidence to show *which* brother she meant when she said in her will "my brother." As was said in the former opinion, "How was the executor to know which one was entitled to a share in the estate without looking to extrinsic evidence?" This was a correct conclusion if the premise on which it was based was correct but the premise being false, the conclusion was erroneous. The case was therefore reversed for further proceedings consistent with that opinion. When the case was remanded to the lower court, further proof was taken by showing that decedent left no living half brothers and it was later stipulated that at the time of the execution of the will and at her death, she had only the one brother referred to in the will and no half brothers or half sisters at the time of the execution of her will or at the time of her death, therefore leaving no ambiguity in the will so far as the brothers were concerned.

Upon return of the case, the appellants, the full bloods, sought to take further proof. They introduced a niece of the full blood who testified in substance, over objection, that decedent had told the mother of witness in her presence that she had left out the half bloods and meant for her property to go to her nieces and nephews of the full blood. They also introduced, over objection, a sister of the full blood who testified in substance that she helped decedent prepare a list of her relatives which contained only those on her mother's side, in other words, relatives of the full blood only and none of the half blood relatives. Later, on motion of attorney for the half bloods, the testimony of these two witnesses was excluded and held for naught because they were parties to the action and beneficiaries under the will, and since they were testifying concerning conversations

and transactions with a dead person, their testimony was incompetent. Clearly the ruling of the court was correct under Sec. 606, subd. 2 of the Civil Code of Practice.

The attorney who drew the will and who was named executor therein was introduced, over objection, and testified in substance that after writing the will he asked the testator for a list of her relatives; that she later furnished him this list but made no statement about whether they were relatives of half or full blood. He read the list, which contains no relatives of the half blood, into the evidence. While the motion of the attorney for the appellees to strike this testimony from the record was overruled at the time, the court in its opinion and final judgment apparently excludes it when it said in its judgment that "the will is unambiguous and clear and definite and there are no grounds for hearing extrinsic testimony and it is ordered and adjudged that the testimony heard on June 22, 1946, (which included this testimony) was incompetent and the court so finds."

## The Applicable Law

The general principle is well settled in this, as in practically all jurisdictions in this country, that extrinsic evidence is not admissible to vary, contradict, or add to the terms of a will or to show a different intention on the part of the testator from that disclosed by the language of the will. In a very comprehensive note in 94 A. L. R. at page 41, the rule concerning unambiguous wills is well set out in the following language: "Where a will contains no ambiguity, latent or patent, and can be carried into effect without the aid of extrinsic evidence, such evidence is not admissible to show the intention of the testator or to give the language of the will a meaning different from that which the law attributes thereto." Citing numerous cases, including a number from Kentucky, including that of Deboe v. Brown, 231 Ky. 682, 22 S. W. 2d 111, 114, in which this court said: "The will speaks for itself, and its meaning must be determined from the language used by the testator as found in the will itself. Extrinsic parol evidence is inadmissible for the purpose of ascertaining what the testator intended to say but did not say, or for the purpose

of altering or contradicting the terms of the will or adding to or subtracting anything from it. Neither is written evidence admissible for such a purpose. Com. v. Manuel, Ex'r, 183 Ky. 48, 208 S. W. 327. * * * The will of Mrs. N. J. Deboe is without latent ambiguities. Her intention is clearly expressed therein. Extrinsic evidence therefore was not competent to show that she meant anything other than what the language in her will plainly implies.''

Other cases so holding are Martin, etc. v. Palmer, etc., 193 Ky. 25, 234 S. W. 742, and Ratliff v. Yost, 263 Ky. 239, 92 S. W. 2d 95.

The reason for this rule of construction is obvious for one could never make a will with any assurance that its plain and unambiguous provisions would be carried out if testimony were admitted to show that the testator meant to say something different from what he did say.

Measured by these standards we think the language employed by Mrs. Hardwick in her will was unambiguous and that when she employed the term ''nieces and nephews,'' it included all her nieces and nephews whether of the whole or half blood and that no extrinsic evidence is admissible to show that she meant to exclude those of the half blood. Had she meant to exclude the latter, it would have been easy to have done so by a simple provision to that effect.

### The ''Law of the Case'' Rule

It is contended by appellants that the opinion rendered on the first appeal is the law of this case; that the opinion of this court on the former appeal precluded the lower court from considering questions decided in that opinion regardless of the soundness thereof. Counsel for appellant contends that counsel for appellee in his petition for rehearing on the first appeal raised every question that he is raising on this appeal and he offers to give up this case if every question that the appellees are raising in this appeal was not covered by the petition for rehearing in that case. We have carefully re-read appellee's petition for rehearing on the first appeal and we cannot agree with appellants' conclusion. The petition for rehearing was a short one

of five pages and was devoted exclusively to the single point that this court had erred in stating that the testator left a brother of the whole blood and several brothers of the half blood and on that erroneous statement of fact had reversed the case so that proof might be taken to determine which brother she referred to in her will, which only mentioned one brother. As we see it now, the petition for rehearing should have been sustained because it pointed out this error. Nevertheless the case was reversed and from the opinion as a whole it is obvious that it was reversed in order that proof might be taken to clear up what the court thought was an ambiguity with reference to testator's brothers. That is the tenor of the decision as a whole. It is true that the last few sentences of that opinion went beyond that phase of the case and appeared to uphold the avowals made at the first trial which would in effect sanction the introduction of extrinsic testimony to explain unambiguous words used in the will. We think that part of the former opinion had no binding effect because the point decided in the case was that it should be remanded to take proof to clarify what was thought to be an ambiguity with reference to brothers of the testator. The words, nieces and nephews, not being ambiguous, no proof was admissible to show that only part of her nieces and nephews, to wit, those of the whole blood, were intended by the testator when she used the expression "nieces and nephews."

Since it is our opinion that there is no ambiguity in the clause of decedent's will being construed, the judgment of the chancellor so holding and excluding testimony offered is affirmed.

Judgment affirmed.