## Childers et al. v. Johnson's Executors et al.

(Decided Jan. 15, 1937.)

L. J. MAY for appellant Childers.

STEELE & VANOVER for appellant Trivette.

J. J. MOORE and H. J. SCOTT for executors.

STRATTON & STEPHENSON for appellee Johnson.

OPINION OF THE COURT BY JUDGE STITES—Affirming in part and reversing in part.

B. F. Johnson died testate on the 27th of July, 1931. His will was unsuccessfully contested by some of his heirs. Trivette v. Johnson, 257 Ky. 681, 79 S. W. (2d) 6. Following the decision in that case, the executors filed this suit asking for a construction of the will. Proof was taken on behalf of the parties interested, and, following a final decision by the chancellor, this appeal was prosecuted. But two questions are presented: (1) What is the proper construction of

the devise to the testator's son, G. F. Johnson? and (2) What apportionment should be made of the taxes paid by the executors on the testator's real estate pending the final settlement of his estate?

It is conceded by both appellants and appellees that the particular devise here involved to G. F. Johnson is ambiguous, and extrinsic evidence was admitted without objection to show the circumstances surrounding the testator at the time of the execution of the will, in order that the court might, with the aid of this evidence, determine the intention of the testator in the use of the words which he employed.

Mr. Johnson had one son, the appellee G. F. Johnson, and, while the record is not clear on this question, he seems to have had nine daughters. His son, who is now a man of mature years, was intimately associated with his father in his various business affairs and seems to have both enjoyed and deserved the testator's confidence. Mr. Johnson was seised of something over 3,000 acres of real estate in Pike county. In July, 1931, he became ill and was taken to a hospital at Pikeville, where he was advised that an immediate operation was necessary. He sent for his attorney, Mr. J. J. Moore of Pikeville, for the purpose of writing his will. Mr. Moore came to the hospital with a stenographer, and Mr. Johnson, with his assistance, dictated the will, which described in detail the boundaries of a number of different tracts devised to his various children. As Mr. Moore was leaving the hospital with the stenographer for the purpose of having the will typed, one of Mr. Johnson's daughters called attention to the fact that the testator had not disposed of his property at Virgie, Ky. Mr. Moore says that he was not familiar with the quantity of land owned by Mr. Johnson at Virgie, but that he went back and asked the testator about the omission. He says Mr. Johnson made substantially this statement: "Yes, that's true, George don't own that land up where his store is located, and I want him to have it." Pursuant to this direction, Mr. Moore inserted the following language in the will:

"I will to my son G. F. Johnson the land on which his store is located and around the store at Virgie, Kentucky."

After the will was typed, it was taken back to the

hospital and read to Mr. Johnson, and was duly executed by him. Mr. Johnson died immediately following the operation.

It now develops that the tract of land at Virgie on which the store is located consists of 33.62 acres in all. It is traversed by the tracks of the Chesapeake & Ohio Railway Company and by United States Highway No. 23. In addition to the store, there are two warehouses on the property designed for use in connection with the store, a filling station, and various other residences and buildings, including the residence of G. F. Johnson. The store was constructed by G. F. Johnson about 1911, and has been operated by him ever since. He likewise constructed the warehouses, although only one of them is used in connection with his business. The record does not disclose how far the property at Virgie is from the other large tract which the testator apportioned amongst his children in his will. It does, however, indicate very clearly, we think, that the testator considered his Virgie property as a unit. Mr. Moore testified that, when he went back to the testator's room, he asked what disposition Mr. Johnson wanted to make of his Virgie property. It was likewise shown that for several years before his death the testator had told at least one witness that he meant for his son to have this tract. Out of all of the large holdings of Mr. Johnson, it was shown that he died intestate as to about 250 acres, which he referred to as "odds and ends," and which he said that he wanted to pass under the law to his children equally. It is hardly conceivable that a man of Mr. Johnson's business sagacity would have considered the Virgie tract as in part "odds and ends" and in part sufficiently important to require a specific devise for the protection of his son. It seems clear to us that, when the testator said that he wanted his son to have the land where his store was located, he had in mind the entire tract of land, and not simply the store.

It is earnestly argued for the appellants that the testimony shows that after his father's death G. F. Johnson wanted to give a small portion of the Virgie tract to a school district for the purpose of constructing a gymnasium thereon, and that he approached his sisters to secure their signatures to the deed. It is claimed that this was an admission on his part that the

testator did not intend to give him the entire Virgie tract. Opposed to this, it was shown that, at the time when the gift was suggested, the will was in contest, and the school district quite naturally could not afford to take the property and construct a building thereon without a deed from all of the persons who might possibly have an interest in the property. Assuming that the admissions or acts of a devisee were evidence of an intention expressed in a will, certainly the acts relied on here prove nothing other than that the school district wanted a clear title to the property, which Mr. G. F. Johnson could not give until this case was disposed of. We conclude, therefore, that the judgment of the chancellor was correct in this particular.

Shortly after this suit was filed, a motion was made by the executors to have the court order a survey of the property of the testator, showing the amount of acreage willed to each of the devisees, "in order that their pro rata part of the taxes which has been paid can be charged against them." Pursuant to this motion, a survey was made, at an expense of something over $1,000, under the direction of the court, and without objection from the devisees. During the process of settlement of the estate, the executors have paid a large amount of taxes on the property in order to protect it from sale until it could be determined to whom it should go. For some reason not apparent in the record, the chancellor directed that the taxes paid by the executors should be apportioned equally against the various devisees. In view of the very purpose for which the survey was obtained, it is difficult to see what justification there could be for thus charging some of the devisees with taxes which are clearly on the shares of others. The point is not seriously argued by the appellees, and we think the judgment is clearly erroneous in this particular. It should not be an impossible task, or, indeed, a very difficult one, for the executors to ascertain from the survey the proportionate part of the taxes that should be charged against each particular devisee. If a motion to that effect is made the court should refer the case to its Master Commissioner to hear proof and report on this question.

The judgment is affirmed in part and reversed in part, the costs to be equally divided.